## Richmond

TODD NICELY v. VIRGINIA ELECTRIC AND POWER COMPANY
(SELF-INSURED).

March 15, 1954.

Record No. 4229.

Present, All the Justices.

The opinion states the case.

*Robert Lewis Young*, for the appellant.

*Hunton, Williams, Anderson, Gay & Moore* and *T. Justin Moore, Jr.*, for the appellee.

MILLER, J., delivered the opinion of the court.

Under section 65-94, Code of 1950, the Industrial Commission of Virginia certified to this court its finding of facts in this case and a question of law arising therefrom for decision.

Determination of the question requires construction of sections 65-51, 65-52, and 65-53, Code of 1950,[1] and a clear

---

[1] Section 65-51. When the incapacity for work resulting from the injury is total, the employer shall pay, or cause to be paid, as hereinafter provided, to the injured employee during such total incapacity a weekly compensation equal to sixty per centum of his average weekly wages, but not more than twenty dollars, nor less than six dollars a week; and in no case shall the period covered by such compensation be greater than five hundred weeks nor shall the total amount of all compensation exceed seven thousand eight hundred dollars. (Amended by Acts of 1952, Ch. 226, p. 314.)

Section 65-52. Except as otherwise provided in the next section hereafter, when the incapacity for work resulting from the injury is partial, the employer shall pay, or cause to be paid, as hereinafter provided, to the injured employee during such incapacity a weekly compensation equal to sixty per centum of the difference between his average weekly wages before the injury and the average weekly wages which he is able to earn thereafter, but not more than twenty dollars a week. In no case shall the period covered by such compensation be greater than three hundred weeks from the date of the injury. In case the partial incapacity begins after a period of total incapacity, the latter period shall be deducted from the maximum period herein allowed for partial incapacity. (Amended by Acts of 1952, Ch. 226, p. 314.)

Section 65-53. In cases included by the following schedule the incapacity in each case shall be deemed to continue for the period specified and the compensation so paid for such injury shall be as specified therein and shall be in lieu of all other compensation:

\*    \*    \*    \*    \*    \*    \*    \*

(15) For the loss of a leg sixty per centum of average weekly wages during one hundred and seventy-five weeks.

\*    \*    \*    \*    \*    \*    \*    \*

(18) The loss of both hands, both arms, both feet, both legs or both eyes, or any two thereof, in the same accident, shall constitute total and permanent incapacity, to be compensated according to the provisions of section 65-51.

\*    \*    \*    \*    \*    \*    \*    \*

In construing this section the permanent loss of the use of a member shall be held equivalent to the loss of such member and for the permanent

understanding of the problem necessitates a statement of the material facts.

On October 12, 1950, claimant Todd Nicely, an employee of defendant, Virginia Electric and Power Company, injured his right knee when he stepped from his employer's truck. His injury restricted his activities, and he was forced to cease work altogether on November 20, 1950.

Claimant's only injury, for which he underwent two operations, was to his knee, and at all times it was anticipated that his injury would eventually result in some permanent partial loss of use of the limb, for which compensation would be payable under section 65-53. Yet it was not until December 11, 1952, when the injury became stabilized that the physicians could determine and evaluate the degree of permanent loss of use of his leg.

On December 4, 1950, claimant and his employer entered into an agreement approved by the Commission on December 11, 1950, by which he was awarded compensation for total disability, under section 65-51, at the maximum rate of $20 a week. He returned to selective work at a reduced wage on April 18, 1951. Under an agreement approved by an award of that date, compensation of $13.44 a week, to continue "during partial disability" was paid him under section 65-52.

He became totally incapacitated again on May 22, 1951, and pursuant to an agreement of May 29, 1951, an award was entered on June 5, 1951, that payments under section 65-51 for total disability be resumed.

Claimant again returned to selective work on January 2, 1952, at a reduced wage, and under a new agreement approved by an award of January 11, 1952, he received compensation under section 65-52 based on 60 per cent of the

partial loss or loss of use of a member compensation may be proportionately awarded.

The weekly compensation payments referred to in this section shall all be subject to the same limitations as to maxima and minima as set out in section 65-51.

wage differential, namely, $11.52 a week, to continue "during partial disability." These payments continued until January 29, 1953, when the employer applied for a hearing under section 65-95, Code of 1950, to have the degree of claimant's permanent incapacity determined under section 65-53. Defendant also requested that all sums paid under section 65-52 for partial incapacity be deducted from any award made under section 65-53, but it did not ask credit for payments made under section 65-51 for temporary total incapacity.

Claimant's payments under section 65-51 for periods of total incapacity aggregated $1,126.36, and his payments under section 65-52 for periods of partial incapacity amounted to $646.72.

The Commission, upon final review, determined in its award of July 2, 1953, that there was a 25 per cent permanent partial loss of use of claimant's leg, and that under section 65-53 he was entitled to $875 for that specific permanent injury.

Over claimant's objection, the employer seeks to deduct from the sum of $875 allowed under section 65-53 for the specific scheduled injury, the sum of $646.72 heretofore paid under section 65-52 for partial incapacity. If allowed, this would leave $228.27 due claimant.

Thus the question certified by the Commission is: "When an employee suffers injury to a member scheduled in section 65-53, Code of Virginia, and is compensated for temporary partial disability under section 65-52 until such time as the injured employee attains maximum recovery, and the degree of permanent partial loss of use of the member can be determined, is the employer entitled to a credit for the sums so paid against such award as must be made for such permanent partial loss of use as is then found to exist."

By the emphatic language of section 65-51, it is made certain that it establishes a standard by which is determined what weekly compensation shall be paid the employee dur-

ing the period (not exceeding five hundred weeks) in which there is total incapacity for work.

Under the positive language of section 65-52, it is made equally certain that the purpose is to establish the standard under which is determined what weekly compensation shall be paid, and over what period of time, during partial disability resulting from any injury other than those specifically enumerated in section 65-53. The compensation provided for in section 65-52 is because of partial incapacity to work and is ultimately dependent upon and determined on the loss of wages. Thus the benefits awarded under both sections 65-51 and 65-52 are for loss of earning capacity. One is applicable where the loss is total and the other where it is partial, but in both instances the extent of incapacity is required to be evidentially ascertained.

The nineteen specific scheduled injuries enumerated in section 65-53 are expressly excepted from the operation of section 65-52. The benefits payable under section 65-53 are for "loss or loss of use" of a member and are fixed and payable regardless of the actual degree of disability, and irrespective of continued employment, loss of wages, or like considerations.

All of the scheduled injuries are treated as causing only partial disability to work and compensated for as such except the injuries listed in paragraph numbered (18), which are declared total disabilities and are expressly directed to be compensated as such under section 65-51.

In *Crawford* v. *Virginia Iron, Coal and Coke Co.*, 136 Va. 266, 118 S. E. 229, decided in 1923, we held that an employee was entitled to "temporary total disability" under section 30 (now Code, section 65-51) for an injury to his finger "up to the time" of its amputation, and "after that time, to the compensation provided by section 32" (now Code, section 65-53) for the loss of the finger. (136 Va., at page 268.) In reaching this conclusion we laid down these principles which settle the question now before us:

"*When total or partial incapacity to work* continues for more than ten days after injury, and that is followed by loss of any member mentioned in section 32 of the act (now Code, section 65-53), the Virginia industrial compensation act, as we think, in sections 30 and 31 (now Code, sections 65-51, 65-52), as qualified by sections 26 and 29 (now Code, sections 65-85, 65-59), provides for the compensation therein specified for *total or partial disability* to be paid up to the time of the loss of such member, at which time the right to such compensation ceases, and, in section 32 (now Code, section 65-53), provides for the compensation therein specified for 'such injury,' that is, for the loss of such member 'in lieu of all other compensation.' The provision in the last named section, that the compensation therein provided shall be 'in lieu of all other compensation' merely puts an end to the right to *any other compensation* than that provided for in section 32 (now Code, section 65-53), for the loss of any member mentioned therein, and *thereafter* changes the basis of the compensation from that of indemnity for disability to work, upon which theory the previous compensation aforesaid is based, to that of indemnity for loss of the member or physical impairment as such." (136 Va., at page 269, italics supplied.)

This language was quoted with approval in *McCarrell v. Harrisonburg Mutual Telephone Co.*, 163 Va. 272, 274, 172 S. E. 241.

Again, in *Gobble* v. *Clinch Valley Lumber Co.*, 141 Va. 303, 127 S. E. 175, decided in 1925, upon the authority of the *Crawford* case, we held that a claimant who had lost sixty per cent of the use of his foot was entitled to the award specified for such injury in section 32 (now Code, section 65-53), and that the insurance carrier was not entitled to credit for what it had previously paid him during the period of his "temporary total disability."

In the present case the employer suggests that the holding in the *Gobble* case was wrong because this court adopted the reasoning of an opinion of the Georgia Court of Ap-

peals in *Jones* v. *Georgia Casualty Co.*, 30 Ga. App. 207, 117 S. E. 467, which was reversed on appeal in *Georgia Casualty Co.* v. *Jones*, 156 Ga. 664, 119 S. E. 721. That is beside the point. We still prefer the reasoning of the inferior Georgia court. In fact, in *Noblin* v. *Randolph Corp.*, 180 Va. 345, 361, 23 S. E. (2d) 209, 215, decided in 1942, we again quoted with approval the language of the lower Georgia court.

It is true that in both the *Crawford* and *Gobble* cases the question was whether the employer or insurance carrier was entitled to credit for payments made for "temporary total disability" under section 65-51, while here the questioned credit is for payments made for "partial disability" under section 65-52. But there is no difference in principle, and the language quoted above from the *Crawford* case expressly says so.

If we sustained the contention of the employer, it would require this injured employee to credit on the award of $875, paid him under section 65-53 for the permanent partial loss of the use of his leg, the sum of $646.72 which was paid to him during the periods of partial disability under section 65-52, thus leaving him only the sum of $228.28 for the loss of use of the limb. We do not think that the legislature intended such a harsh result, which runs counter to the firmly settled policy that the act should be liberally construed in favor of the injured workman.

In other words, we hold that the provision in Code, section 65-53, that the compensation therein provided for shall be "in lieu of all other compensation," merely excludes the payment *thereafter* of any other compensation in addition to that specified in the section. It was not intended to require the injured employee to surrender, or give credit to the employer or insurance carrier for, payments received during the earlier period in which the physicians are seeking to evaluate the degree or permanency of the employee's injuries.

For these reasons we conclude that the proper answer to the certified question is No, that is, that the employer is not entitled to deduct from the $875 due Nicely as compensation for the injury scheduled under section 65-53, the sum of $646.72 previously paid under section 65-52.