## Richmond

## County of Spotsylvania, et al. v.
## Mrs. William L. Hart

November 23, 1977.

Record No. 761180.

Present: All the Justices.

*Frank B. Miller, III (Mary Louise Kramer; Sands, Anderson & Marks*, on brief), for appellants.

*Carroll E. Smith*, for appellee.

CARRICO, J., delivered the opinion of the Court.

This case involves the application of Code §§ 65.1-56 [1] and -64, [2] parts of the Workmen's Compensation Act. Under § 65.1-56, an employee is entitled to compensation for fixed periods for the total or partial loss or loss of use of specified members of his body. Under § 65.1-64, when an employee receives or is "entitled to compensation" for an injury covered by § 65.1-56 and he dies from unrelated causes, "the unpaid balance of compensation" is payable to his statutory distributees dependent upon him for support. The present case invokes the survival provisions of § 65.1-64, and the issue is whether, at the time of his death from an unrelated cause, the employee was "entitled to compensation" for an injury covered by § 65.1-56.

---

[1] In pertinent part, § 65.1-56 reads as follows:

"In cases included by the following schedule the incapacity in each case shall be deemed to continue for the period specified and the compensation so paid for such injury shall be as specified therein and shall be in lieu of all other compensation
. . . .
". . . .
"(13) For the loss of an arm sixty-six and two-thirds per centum of the average weekly wages during two hundred weeks.
". . . .
"In construing this section the permanent loss of the use of a member shall be held equivalent to the loss of such member and for the permanent partial loss or loss of use of a member compensation may be proportionately awarded."

[2] In pertinent part, § 65.1-64 reads as follows:

"When an employee receives or is entitled to compensation under this Act for an injury covered by § 65.1-56 and dies from any other cause than the injury for which he was entitled to compensation, payment of the unpaid balance of compensation shall be made to his statutory distributees, dependent upon him for support, in lieu of the compensation the employee would have been entitled to had he lived . . . ."

On January 14, 1973, the employee, William L. Hart, sustained a gunshot wound to his right arm in the course of his duties as a deputy sheriff of Spotsylvania County. Pursuant to an agreement with the County and the latter's insurance carrier, Hart received compensation for temporary total incapacity until January 6, 1974, when the compensation payments ceased upon his return to work at his pre-injury wage.

According to his physician, Dr. Marriott C. Johnson, Hart "made a remarkable recovery" and "regained amazing function in his right arm." He experienced, however, "some stiffness in his fingers" and "in the wrist." Doctor Johnson discussed with Hart "the possibility of another evaluation" by Dr. Frank McCue, a hand surgeon, "in regards to optimal improvement of [Hart's] hand." Hart was "hesitant about any further surgery because he [did not] want to lose what he [had] regained." Later, however, with the "upgrading" of the sheriff's department where Hart was employed, he became "very interested in what [could] be done to further improve the hand function." Doctor Johnson advised Hart that "surgery on the forearm . . . would be a strong consideration." Consequently, Johnson referred Hart to Dr. McCue, with the request that McCue determine whether surgery "was a serious consideration" and to "proceed if it was indicated."

Hart had an appointment to see Dr. McCue on November 10, 1975. On November 2, however, Hart died of a heart attack. On November 11, Dr. Johnson wrote the insurance carrier, reporting that, upon reviewing his records following Hart's death, he discovered he "had never stated a permanent impairment rating on Mr. Hart's right arm." Johnson opined that, based upon "a total evaluation" made of Hart's injury during an examination on October 30, the "impairment rating of [Hart's] right arm on his last visit would be . . . 60 per cent permanent impairment of that arm."

Invoking the survival provisions of § 65.1-64, on February 26, 1976, Hart's widow, the present appellee, applied to the Industrial Commission for a determination "whether or not the insurance company in this case is responsible for any further payment" on account of Hart's 1973 injury to his right arm. Upon a record consisting of Dr. Johnson's various medical reports, the Commission held that, at the time of his death, Hart "had a compensable 60% permanent loss of use of the right

arm." The Commission held further that the claim for compensation for permanent disability survived Hart's death, thus entitling his statutory distributees dependent upon him for support to an award of $70 per week for 120 weeks. The award was entered accordingly, and the County and its insurance carrier have appealed.

The benefits provided by Code § 65.1-56 for the loss or the loss of use of a body member are payable "irrespective of continued employment, loss of wages, or like considerations." While § 65.1-56 benefits are "in lieu of all other compensation," they are payable even though the employee, as in the present case, previously may have received compensation for temporary total incapacity or, as in other cases, for temporary partial incapacity. *Nicely* v. *VEPCO*, 195 Va. 819, 823, 825, 80 S.E.2d 529, 531, 532-33 (1954). And, where the permanent loss or loss of use of a member is partial only, "compensation may be proportionately awarded." Code § 65.1-56.

The benefits provided by § 65.1-56 for partial loss are awardable upon a "rating" by the Commission of the percentage of incapacity suffered by the employee. The "rating" determines the ultimate amount of compensation the employee is entitled to receive. Pertinent to the present situation, if an arm injury causes total incapacity of that member, the scheduled compensation would be awardable for 200 weeks; but because the Commission "rated" Hart's loss of arm use at 60%, compensation was "proportionately awarded" by fixing the compensable period at 120 weeks.

Where, as here, an employee suffers the loss of use of a scheduled body member, the compensation provided by § 65.1-56 is not awardable "until the injury has reached a state of permanency, i. e. maximum improvement, when the degree of loss may be medically ascertained." *Collins* v. *G. M. Clements Company*, 48 O.I.C. 49 (1966); *Nicely* v. *VEPCO, supra.* In other words, before § 65.1-56 benefits are awardable, it must appear both that the partial incapacity is permanent and that the injury has reached maximum medical improvement.

In the present case, it is not questioned that Hart's arm injury was permanent. Whether, however, at the time of Hart's death from an unrelated cause, the arm injury had reached maximum medical improvement is the crucial issue in the case. If the injury had not reached such improvement at the time of his

death, Hart could not have been "rated" for benefits under § 65.1-56, and he would not have been "entitled to compensation" for the injury within the meaning of the survival provisions of § 65.1-64.

The widow-appellee contends that the Commission "found from all of the evidence, that [Hart's] injury had reached maximum improvement and that [Hart] could have been rated for permanent disability" under § 65.1-56. These findings, the widow-appellee argues, are "conclusive and binding" upon this court.

■ The Commission, however, in its opinion stated the issue in the case to be this:

"[W]hether or not a claim for permanent disability survives the death of the claimant when no claim for compensation for the permanent disability had been filed prior to his death, *although maximum improvement had been reached* and the claimant could have been rated for permanent disability." (Emphasis added.)

Neither in other parts of the Commission's opinion nor anywhere in the opinion of the hearing commissioner is the question of maximum improvement mentioned. The Commission merely assumed that Hart's injury had reached maximum improvement, and, then, acting upon the assumption, held that the claim for permanent disability survived Hart's death. In making the assumption, the Commission overlooked the real issue in the case, the question of maximum improvement, which was presented squarely by the memoranda filed with the Commission by the parties.

We are not bound, therefore, by any finding of fact by the Commission upon the issue of maximum medical improvement. But even if the Commission had made a finding that maximum improvement had been reached, we would not be bound thereby because the finding would not have been supported by credible evidence. *Conner* v. *Bragg*, 203 Va. 204, 207, 123 S.E.2d 393, 395 (1962).

Standing alone, Dr. Johnson's belated "rating" of Hart's arm injury at "60 per cent permanent impairment" might justify an inference that the doctor considered the injury to have reached maximum medical improvement. Resort to inference would be

necessary because, in his reports, Dr. Johnson did not indicate that the injury had reached maximum improvement.

Doctor Johnson's "rating," however, does not stand alone, and any inference that he considered Hart's injury optimally improved is overcome by known facts. Doctor Johnson clearly stated that further surgery on Hart's arm was "a strong consideration," consonant with Hart's expressed wish to see "what [could] be done to improve the hand function." Doctor Johnson referred Hart to Dr. McCue to determine whether surgery was "a serious consideration" and to "proceed if it was indicated." And an appointment for these purposes was made for Hart with Dr. McCue.

Given the facts of this case, until the doctors had decided against surgery for Hart, or surgery had been performed and its outcome had become known, it could not be determined whether Hart's arm injury had reached maximum medical improvement. Any finding by the Commission, therefore, that the injury had reached such stage of improvement would be based upon speculation and not upon evidence.

Accordingly, we hold that, at the time of his death, Hart was not entitled to the benefits provided by Code § 65.1-56. With this determination, it follows necessarily that the claim for benefits did not survive Hart's death. The award of the Commission will be reversed, therefore, and a final award will be entered here in favor of the County and its insurance carrier.

*Reversed and final award.*