COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Coleman and Elder
Argued at Richmond, Virginia


GUNST CORPORATION and
 RELIANCE INSURANCE COMPANY
                                      OPINION BY
v.   Record No. 1530-98-2      JUDGE JAMES W. BENTON, JR.
                                       MAY 18, 1999
ALICE LEE CHILDRESS


        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

          S. Vernon Priddy, III (Sands, Anderson,
          Marks & Miller, on brief), for appellants.

          B. Mayes Marks, Jr., for appellee.


     The Workers' Compensation Commission awarded Alice Lee

Childress compensation for permanent total incapacity pursuant to

Code § 65.2-500.  Gunst Corporation and Reliance Insurance

Company, whom we designate "Gunst," contend (1) the medical

evidence was insufficient to prove that Childress reached maximum

medical improvement and (2) the commission improperly ruled that

Childress met her burden of proving entitlement to compensation

for permanent total incapacity.  For the reasons that follow, we

affirm the award.

                              I.

     The evidence at the evidentiary hearing proved that Alice

Lee Childress worked for Gunst as a food shop manager where she

prepared meals, stocked supplies, and performed other duties.

Childress was fifty-six years of age, had a ninth grade education, and had never received any vocational training. When she began working for Gunst, she received on-the-job training. As the food shop manager, Childress was required to stand eight hours per day and lift containers as heavy as sixty-five pounds. On May 31, 1989, Childress suffered a compensable injury by accident to both of her knees.

After her injury, Childress returned to light duty work as a receptionist. However, she underwent arthroscopic surgery on her left knee on August 8, 1989, and on her right knee on December 3, 1990. In 1991, Dr. Kennedy S. Daniels performed a bilateral total knee replacement surgery. Childress later returned to her receptionist position; however, she could only walk or stand for short periods. All projects and materials necessary to perform her tasks were brought to her desk by co-workers. Childress then began working part-time. Gunst accepted responsibility for the injury and paid Childress compensation under a series of awards for temporary total incapacity and temporary partial incapacity.

In March 1992, Childress underwent arthroscopic repair of her right knee. Childress began treatments with Dr. Richard Worland and had another revision surgery on her right knee in May. As a result of her knee injuries, Childress began to suffer from lower back pain. Dr. Hallett Mathews, who began treating Childress in 1992, opined that Childress' "swing [gait]

-

has caused her low back to wear out extensively" and noted that she "will see degeneration in time."  He later reported a direct connection between Childress' knee problems and spinal deterioration.

In November 1992, Dr. Worland opined that Childress "has reached her maximum [medical] improvement."  A month later, Dr. Worland "rate[d] the permanent disability regarding [Childress'] lower extremities . . . at 50% of each leg."  He also noted that her condition likely caused her to be "100% unfit for gainful employment other than a total sedentary position."  On March 25, 1993, the commission approved a memorandum of agreement and awarded Childress permanent partial loss of use benefits pursuant to Code § 65.2-503 based upon "50% loss of use of the left and right legs."

Childress continued to receive treatments for her leg and back injuries.  Dr. Mathews performed a lumbar laminectomy-decompression in June 1996.  After this procedure, Childress continued to have lower back pain which had a radiating effect on her lower extremities.  Childress testified that she has been unable to work since the spinal fusion surgery to her back.  In 1996, Dr. Mathews reported that Childress' back injury is now "a chronic condition which has not and will not be resolved surgically" and noted that Childress was "100% disabled from any working occupation . . . both now and permanent for the future."

-

Due to continuing knee problems, Childress also underwent a total revision of the right knee replacement in November 1996. Dr. Worland testified that Childress would need further replacement surgery. He also testified that he anticipated eventual amputation of Childress' legs above her knees. On May 13, 1996, finding that 500 weeks of compensation benefits had been paid, the commission terminated the awards for permanent partial and temporary partial benefits. See Code § 65.2-502.

Childress filed a claim in 1996 for compensation for permanent total incapacity from work. Gunst denied the claim, asserting that Childress "had not reached maximum medical improvement" and that "the medicals do not support the claim for permanent total benefits." After an evidentiary hearing on Childress' claim for compensation for permanent total incapacity, the deputy commissioner ruled that Childress had: (1) reached maximum medical improvement, (2) received a permanent partial loss of use rating of 50% to both the right and left lower extremities, and (3) become disabled from using her legs to any substantial degree in any gainful employment. Thus, the deputy commissioner entered an award for lifetime permanent total incapacity compensation. The full commission affirmed the deputy commissioner's decision, ruled that Childress was permanently and totally disabled under the Act, and modified the beginning date for the benefits to commence on October 27, 1996.

-

II.

Gunst contends the evidence proved Childress is prevented from working solely because of pain and weakness from her back. Thus, Gunst posits that the commission "wrongly concluded that Childress established that both conditions generating the pain in her legs, her back and her knees, upon the combination of which Dr. Worland concluded that she should not work, had reached [maximum medical improvement]."  We disagree.

The principle is well established that "[w]here, as here, an employee suffers the loss of use of a scheduled body member, the compensation provided by [Code § 65.2-503] is not awardable 'until the injury has reached a state of permanency, i.e. maximum improvement, when the degree of loss may be medically ascertained.'"  County of Spotsylvania v. Hart, 218 Va. 565, 568, 238 S.E.2d 813, 815 (1977) (citation omitted).  Thus, before the commission may award benefits pursuant to the schedule in Code § 65.2-503 for the loss of use of a body member, "it must appear both that the . . . [loss or loss of use] is permanent and that the injury has reached maximum medical improvement."  Id.  The commission has consistently ruled that an employee has reached maximum medical improvement if no reasonable expectation exists that the employee will obtain further functional improvement from medical treatment, even though the injury remains symptomatic and disabling.  See e.g. Billings v. King Electric, Inc., VWC File No. 157-39-38,

-

n.1 (October 24, 1995).  See also 4 Larson, Workers' Compensation Law § 57.12(b) and (c) (1998).

The commission's determination that maximum medical improvement has been reached is a factual finding.  See Cafaro Construction Co. v. Struther, 15 Va. App. 656, 660, 426 S.E.2d 489, 492 (1993).  Pursuant to statute, the commission's factual findings are conclusive and binding on this Court when those findings are based on credible evidence.  See Code § 65.2-706; McCaskey v. Patrick Henry Hospital, 225 Va. 413, 415, 304 S.E.2d 1, 2 (1983).  Furthermore, in our review, we are required to construe the evidence in the light most favorable to the party who prevailed before the commission.  Crisp v. Brown's Tysons Corner Dodge, Inc., 1 Va. App. 503, 504, 339 S.E.2d 916, 916 (1986).

Applying these principles, we note, as the commission found, the record is undisputed that in 1993 Childress was awarded benefits under Code § 65.2-503(B) for loss of use of her legs.  She was not seeking another award in 1996 for a scheduled loss under Code § 65.2-503(B).  In 1992, Dr. Worland had opined that Childress would not further improve in her ability to use her left and right legs.  The commission noted that Gunst joined in a memorandum of agreement establishing Childress' ratable permanency.  In accordance with that agreement, the commission entered an award in 1993 granting Childress permanent partial loss of use benefits based upon "50% loss of use of [her] legs."

-

The commission's award was a tacit finding and acknowledgement of Gunst's agreement that Childress had reached maximum medical improvement. See Code § 65.2-706 ("The award of the Commission . . . shall be conclusive and binding as to all questions of fact."); see also Hart, 218 Va. at 568, 238 S.E.2d at 815 (holding that the benefit "provided by [Code § 65.2-503] is not awardable 'until the injury has reached a state of permanency, i.e. maximum improvement'").

The commission's finding that Childress had reached maximum medical improvement was based on Dr. Worland's unequivocal report. Dr. Worland also linked Childress' inability to walk to both her knee injury and the pain she suffers when walking because of the back injury. In addition, Dr. Mathews opined that Childress' back condition, which resulted from her leg injury, would not improve and was a chronic condition that could not be resolved surgically. The commission found to be credible Dr. Worland's report that Childress would not have further functional improvements to her legs. The commission also accepted as credible Dr. Worland's and Childress' testimony that pain limited Childress' ability to walk. Thus, the evidence supports the commission's finding that Childress' disability in her legs is not based solely on pain.

We further note that in his testimony in 1997, Dr. Worland reconfirmed his opinion that Childress had reached maximum medical improvement. He also then opined that Childress cannot

-

use her legs to any substantial degree in employment. Furthermore, Dr. Mathews also reported that Childress is "100% disabled from any working occupation . . . both now and in the future."

Accordingly, we hold that the record supports the commission's finding that Childress had reached maximum medical improvement regarding the injury to her legs.

III.

As the Supreme Court reiterated in Georgia-Pacific Corp. v. Dancy, 255 Va. 248, 497 S.E.2d 133 (1998), "'[t]he phrases "total and permanent loss" or "loss of use" of a leg do not mean that the leg is immovable or that it cannot be used in walking around the house, or even around the block. They do mean that the injured employee is unable to use it in any substantial degree in any gainful employment.'" Id. at 252, 497 S.E.2d at 135 (quoting Virginia Oak Flooring Co. v. Chrisley, 195 Va. 850, 857, 80 S.E.2d 537, 541 (1954)).

The record contains evidence from Childress, Dr. Worland, and Dr. Mathews, which the commission found to be credible, establishing that Childress was permanently and totally incapacitated from all gainful employment.

> We do not retry the facts before the Commission nor do we review the weight, preponderance of the evidence, or the credibility of witnesses. If there is evidence or reasonable inference that can be drawn from the evidence to support the Commission's findings, they will not be

-

disturbed by this Court on appeal, even though there is evidence in the record to support contrary findings of fact.

Caskey v. Dan River Mills, Inc., 225 Va. 405, 411, 302 S.E.2d 507, 510-11 (1983).

Dr. Mathews opined that Childress is "100% disabled from any working occupation . . . now and permanently for the future." Dr. Worland extensively testified by deposition in 1997 concerning Childress' limitations and opined that Childress "is not fit for gainful employment" and would not be so in the future. The commission's opinion referenced in detail Dr. Worland's testimony. Childress' testimony also established her physical limitations and inability to work. See Chrisley, 195 Va. at 857-60, 80 S.E.2d at 541-43; Morris v. Pulaski Veneer Corp., 183 Va. 748, 754-55, 33 S.E.2d 190, 193 (1945). This evidence supports the commission's finding that Childress' injury by accident "has rendered her unable to use her legs to any substantial degree in any gainful employment."

Accordingly, we affirm the commission's award.

Affirmed.

-