COURT OF APPEALS OF VIRGINIA

Present: Judges Petty, Huff and Senior Judge Annunziata
Argued at Lexington, Virginia

BRANDON CREASEY

v.      Record No. 0264-14-3

GP BIG ISLAND, LLC AND
 INDEMNITY INSURANCE COMPANY
 OF NORTH AMERICA

MEMORANDUM OPINION* BY
JUDGE WILLIAM G. PETTY
NOVEMBER 18, 2014

FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

James B. Feinman (Andrew D. Finnicum; James B. Feinman &
Associates, on brief), for appellant.

S. Vernon Priddy III (Michael J. Goff, Jr.; Two Rivers Law Group,
P.C., on brief), for appellees.

Brandon Creasey appeals an order of the Workers' Compensation Commission

dismissing his claim for permanent partial disability benefits and denying his claim for

temporary total disability benefits for the periods of February 24, 2012 through May 8, 2012 and

May 31, 2012 through August 15, 2012.  On appeal, Creasey argues that the dismissal was in

violation of well-established precedent and practice because the claim was not continued until he

reached maximum medical improvement.  He also argues that the commission erred in arbitrarily

disregarding its own marketing guidelines and finding Creasey failed to reasonably market his

residual work capacity.  For the reasons set forth below, we affirm the commission.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

I.

Because the parties are fully conversant with the record in this case and this memorandum opinion carries no precedential value, we recite below only those facts and incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal.  On appeal, "[w]e view the evidence in the light most favorable to the prevailing party below, and '[t]he fact that contrary evidence may be found in the record is of no consequence if credible evidence supports the commission's finding.'"  Va. Polytechnic Inst. v. Posada, 47 Va. App. 150, 158, 622 S.E.2d 762, 766 (2005) (second alteration in original) (quoting Creedle Sales Co. v. Edmonds, 24 Va. App. 24, 26, 480 S.E.2d 123, 124 (1997)).

On March 19, 2012 and June 11, 2012 Creasey filed a claim for benefits, seeking lifetime medical benefits, temporary total disability benefits from February 24, 2012 to May 8, 2012 and beginning June 2, 2012 and continuing, and permanent partial disability.  Creasey alleged that he injured his right knee, back, and right hip by accident on February 24, 2012 while on the job working for GP Big Island, LLC.  At a hearing before a deputy commissioner, the following exchange occurred between Creasey's attorney and the deputy commissioner regarding Creasey's permanent partial disability claim:

> DEPUTY COMMISSIONER:  Do you wish to reserve the PPD claim?
>
> MR. FEINMAN:  Well, no, I think that---
>
> DEPUTY COMMISSIIONER:  Are you ready for that?
>
> MR. FEINMAN:  ---I think we've submitted evidence on that.  It's a 15% permanent partial disability of the leg.

As a result of this exchange, the deputy commissioner considered Creasey's claim for permanent partial disability.  Creasey presented medical evidence supporting his claim for temporary total disability; however, the only evidence of permanent disability was a medical note from a

physician's assistant stating, "PPD Rating 15% right leg status post arthroscopy with persistent pain and sciatica."

Creasey then introduced evidence of a marketing list showing that he had contacted forty-six employers between June 14, 2012 and August 6, 2012. He testified that he received one phone call from a potential employer. He did not register with the Virginia Employment Commission.

In an opinion dated May 2, 2013, the deputy commissioner found that the accident arose out of Creasey's employment, that Creasey suffered an injury to his right knee, and that he was released to and capable of either sedentary or light-duty work during the period for which temporary total disability benefits were claimed.[1] She dismissed the claims of injury relating to Creasey's back and right hip. She further held that Creasey failed to adequately market his residual work capacity from February 24, 2012 through May 8, 2012 and from May 31, 2012 through August 15, 2012; therefore, his claim for temporary total disability benefits for those times was denied. He was awarded temporary total disability benefits for the time from August 16, 2012 through October 29, 2012.

As to the claim for permanent partial disability, the deputy commissioner noted that "we are not convinced that the claimant has reached maximum medical improvement." She then went on to deny the permanent partial disability claim because "there [was] no evidence that [Creasey's doctor] was aware of and consented to the 15% rating." She was "not persuaded by the evidence that the 15% rating relate[d] only to the claimant's compensable knee injury"

---

[1] We note here that GP Big Island filed a separate appeal to this Court challenging the commission's holding that the injury to Creasey's knee arose out of a risk of his employment. In a memorandum opinion decided this day, November 18, 2014, we affirmed the holding of the commission. See GP Big Island, LLC v. Creasey, No. 0273-14-3 (Va. Ct. App. Nov. 18, 2014).

because Creasey's doctor "was treating the claimant for low back, right SI joint, and right gluteal pain, none of which [were] causally related to the work accident."

On May 9, 2013, Creasey requested review of the deputy commissioner's denial and dismissal of his permanent partial disability claim and her finding that he had not adequately marketed his residual work capacity. On review, the full commission affirmed the deputy commissioner's decision in every respect.

II.

A. Permanent Partial Disability

On appeal, Creasey argues that the commission erred in dismissing his claim for permanent partial disability instead of moving the claim to the inactive docket and allowing the claim to remain filed with the commission until further evidence was submitted to establish the claim. We disagree.

Code § 65.2-503 provides the statutory authority for awarding permanent partial disability benefits in Virginia. Before benefits under this section are awardable, "it must appear both that the partial incapacity is permanent and that the injury has reached maximum medical improvement." Cnty. of Spotsylvania v. Hart, 218 Va. 565, 568, 238 S.E.2d 813, 815 (1977). Further, the permanent partial disability claimant has "the burden of establishing by a preponderance of the evidence the existence of a disability which was the consequence of the injury by accident." Hungerford Mech. Corp. v. Hobson, 11 Va. App. 675, 678, 401 S.E.2d 213, 215 (1991). In determining whether benefits for partial loss are to be awarded, "the commission must rate 'the percentage of incapacity suffered by the employee' based on the evidence presented." Id. at 677, 401 S.E.2d at 215 (quoting Hart, 218 Va. at 568, 238 S.E.2d at 815). "Medical evidence is not necessarily conclusive, but is subject to the commission's consideration

and weighing." Id. Therefore, "a medical rating of the employee's disability is evidence which an employee offers in order to meet the burden of proof." Id. at 677-78, 401 S.E.2d at 215.

The commission's decisions regarding permanent impairment and maximum medical improvement are factual findings that are conclusive and binding on this Court when they are based on credible evidence. See Code § 65.2-706; McCaskey v. Patrick Henry Hosp., 225 Va. 413, 415, 304 S.E.2d 1, 2 (1983). In conducting our review, "we are required to construe the evidence in the light most favorable to the party who prevailed before the commission." Gunst v. Childress, 29 Va. App. 701, 707, 514 S.E.2d 383, 386 (1999) (citing Crisp v. Brown's Tysons Corner Dodge, Inc., 1 Va. App. 503, 504, 339 S.E.2d 916, 916 (1986)).

Here, Creasey chose to have his permanent partial disability claim litigated and then failed to meet his burden of proof to establish entitlement to permanent partial disability benefits. The deputy commissioner refused to accept the note from the physician's assistant as evidence of an impairment rating. She also concluded that the rating did not relate to the compensable knee injury. In her opinion she noted that "we decline to accept the impairment rating because it was given by a physician's assistant and there is no evidence that [Creasey's doctor] was aware of and consented to the 15% rating." She also added, "[W]e are not persuaded by the evidence that the 15% rating relates only to the claimant's compensable knee injury." The commission affirmed, stating that "we agree with the Deputy Commissioner that the claimant did not meet his burden of proving permanent partial disability" and "the claimant cannot elect to have the claim heard and once he loses on the merits ask to preserve the claim."

Thus, Creasey "failed to present quantified evidence of the loss of use of his leg[]." Hill v. Woodford B. Davis Gen. Contractor, 18 Va. App. 652, 653, 447 S.E.2d 237, 237 (1994). And, as noted above, medical evidence "is subject to the commission's consideration and weighing." Hobson, 11 Va. App. at 677, 401 S.E.2d at 215. Therefore, "'[b]ecause the evidence in support

- 5 -

of the claimant's application fail[ed] to rate the functional loss of use of his leg[], the claimant failed in his burden of proof to establish entitlement to benefits for permanent partial or total loss of use of his leg[].'" Hill, 18 Va. App. at 653, 447 S.E.2d at 237 (quoting Cafaro Constr. Co. v. Strother, 15 Va. App. 656, 662, 426 S.E.2 489, 493 (1993)). Simply put, because Creasey failed to establish the existence of a permanent impairment or that the impairment rating he introduced was related to the compensable injury, there was no need for the commission to continue the matter until that non-compensable impairment reached maximum medical improvement.

Creasey cites Brown v. United Airlines, Inc., 34 Va. App. 273, 540 S.E.2d 521 (2001), to support the proposition that permanent partial disability claims, if not sufficiently supported, should be placed on the inactive docket. In Brown, however, the commission had previously entered an award in the claimant's favor providing for compensation for permanent partial disability. Id. at 274, 540 S.E.2d at 521. Several years later, the claimant filed a new claim for additional permanent partial disability benefits and to establish a disability rating. Id. Following a hearing, the deputy commissioner held that the claimant had not yet reached maximum medical improvement, denied the claim, and ordered the case removed from the docket. Id. at 275, 540 S.E.2d at 522. Six months later, the claimant requested that the matter be rescheduled for a hearing. Id. The commission held that the request was, in effect, a new claim and was barred by the statute of limitations because it was not filed within three years from the date for which compensation was last paid. Id. This Court reversed the commission's decision, concluding that the deputy commissioner's decision to dismiss the claim and remove it from the docket was an interlocutory decision that allowed the commission to retain jurisdiction over the claim and leave it open for future determination. Id. at 281, 540 S.E.2d at 523.

We made the very narrow holding in <u>Brown</u> that in light of the specific language in the commission's initial disposition of the claim, which lacked clear language demonstrating an intent to dismiss, that initial order was interlocutory and "did not dismiss the claim." <u>Id.</u> at 277-78, 540 S.E.2d at 523. Significantly, we did not hold that an order denying *and dismissing* a claim for failure to prove a permanent partial disability resulting from a compensable injury was interlocutory in nature.

Thus, the holding from <u>Brown</u> is not, as Creasey asserts, that the commission must retain jurisdiction to hear all permanent partial disability claims until the claimant can prove maximum medical improvement. Instead, <u>Brown</u> stands for the proposition that *when* there is evidence of a compensable permanent partial disability and when the commission, in its discretion, decides to retain jurisdiction of the claim by denying it without dismissing it, that claim *may* be re-opened later. That was simply not the situation here. In refusing to accept Creasey's proof of permanent impairment, the commission held that his permanent partial disability claim had not been proven and thus the claim was "DENIED and DISMISSED." Because the commission's decision was credible and supported by the evidence, we will not disturb it on appeal.

### B. Failure to Reasonably Market Residual Work Capacity

Creasey further argues that the commission erred in arbitrarily disregarding its own marketing guidelines and finding Creasey failed to reasonably market his residual work capacity. With this, we also disagree.

"A partially incapacitated employee, absent an award from the commission, is not entitled to temporary total disability benefits unless he has made a reasonable effort to market his remaining capacity for work." <u>White v. Redman</u>, 41 Va. App. 287, 292, 584 S.E.2d 462, 464 (2003). "In determining whether a claimant has made a reasonable effort to market his remaining work capacity, we view the evidence in the light most favorable to . . . the prevailing

party before the commission . . . ." Nat'l Linen Serv. v. McGuinn, 8 Va. App. 267, 270, 380

S.E.2d 31, 32 (1989). Unless we can say as a matter of law that claimant's evidence sustained

his burden of proof, the commission's findings are binding and conclusive upon us. Tomko v.

Michael's Plastering Co., 210 Va. 697, 699, 173 S.E.2d 833, 835 (1970). In Ford Motor Co. v.

Favinger, 275 Va. 83, 89-90, 654 S.E.2d 575, 579 (2008) (alterations in original) (citations

omitted), the Supreme Court outlined the framework for analyzing an employee's efforts, or lack

thereof, to market his residual work capacity:

> There are no fixed guidelines for determining what
> constitutes a "reasonable effort" by an employee to market residual
> work capacity. Great Atlantic & Pacific Tea Co. v. Bateman, 4
> Va. App. 459, 467, 359 S.E.2d 98, 102 (1987). An employee must
> "exercise reasonable diligence in seeking employment" and the
> reasonableness of an employee's effort will be determined on a
> case by case basis, taking into account "all of the facts and
> surrounding circumstances." Id. Some of the criteria, however,
> that should be considered include:
>
>> (1) the nature and extent of [the] employee's
>> disability; (2) the employee's training, age,
>> experience, and education; (3) the nature and extent
>> of [the] employee's job search; (4) the employee's
>> intent in conducting his job search; (5) the
>> availability of jobs in the area suitable for the
>> employee, considering his disability; and (6) any
>> other matter affecting [the] employee's capacity to
>> find suitable employment.
>
> McGuinn, 8 Va. App. at 270, 380 S.E.2d at 32. In sum, an
> employee "must present 'some evidence that he [has] engaged in a
> good faith effort to obtain work within the tolerance of his physical
> condition' and has failed to find a job, either due to his injury or
> because no such work was available in the community."

Here, it is undisputed that Creasey contacted forty-six potential employers between June

14, 2012 and August 6, 2012. However, in holding that Creasey failed to market his residual

work capacity, the commission noted,

> While the claimant testified he looked for work within his restrictions, the contacts from his marketing list are not consistent with that testimony. It appears he visited businesses randomly and applied for jobs. Under these circumstances, we find there was not a good faith effort to find a job within his restrictions.

We cannot say, as a matter of law, Creasey sustained his burden of proof; therefore, the commission's findings are binding on us. In accordance with the commission's position as fact finder, it found that Creasey's marketing efforts were not made in a good faith attempt to find employment within his restrictions. Neither the deputy commissioner nor the full commission found Creasey's claims regarding the extent of his efforts credible, nor did they find that he made a sufficient effort to find jobs suitable for him, considering his disability. Although Creasey testified that he contacted forty-six employers within his restrictions, the commission found his job hunt to be purely random and uncalculated. Because it is supported by the evidence, we will not disturb the commission's factual finding that Creasey failed to market his residual work capacity.

### III.

For the foregoing reasons, we affirm the decision of the full commission.

Affirmed.
