COURT OF APPEALS OF VIRGINIA

Present:    Judges Huff, Causey and White
Argued by videoconference

**PUBLISHED**

SPRINGFIELD PEST, ET AL.

v.       Record No. 2056-23-2

SCOTT PETERMAN

OPINION BY
JUDGE KIMBERLEY SLAYTON WHITE
NOVEMBER 26, 2024

FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

> Erica S. Blackman (Two Rivers Law Group, P.C., on brief), for
> appellants.
>
> W. David Falcon, Jr. (Ackerman & Falcon, LLP, on brief), for
> appellee.

Springfield Pest and Old Republic Insurance Company (collectively "Springfield Pest")[1]

appeal the decision of the Workers' Compensation Commission awarding Scott Peterman,

employee of Springfield Pest, permanent partial disability benefits for the 21.5% loss-of-use of his

right leg. Springfield Pest claims that the Commission's consideration of Peterman's post-surgery

impairment rating was in error based on the Supreme Court of Virginia's decision in *Loudoun*

*County v. Richardson*, 298 Va. 528 (2020), and, in the alternative, that there was insufficient

evidence for the Commission to conclude that Peterman's condition worsened following his total

right knee replacement surgery. We disagree with both arguments and affirm.

BACKGROUND

On June 15, 2017, Peterman injured his right knee while working as an operations

manager for Springfield Pest. In 2019, Peterman filed a claim for permanent partial disability

---

[1] Springfield Pest is the claimant's employer, and Old Republic Insurance Company is an
insurer.

benefits for loss of use of his right knee. By stipulated order, the Commission awarded Peterman 8.75% permanent partial disability benefits for his right lower extremity for 15.31 weeks. Peterman continued on light duty, never returning to his pre-injury tasks.

In 2021, Peterman was scheduled for a total right knee replacement surgery. Following the surgery, performed by Dr. Neubauer, Peterman reported continued knee problems and sought an independent medical evaluation from Dr. Salter. Dr. Salter found that Peterman's knee was now 43% impaired, which he attributed entirely to Peterman's work accident. Based on Dr. Salter's evaluation, Peterman filed a claim seeking additional permanent partial disability benefits for his right lower extremity in December 2022. At Springfield Pest's request, Dr. Tepper performed a second independent medical evaluation of Peterman in May 2023. According to Dr. Tepper, Peterman's right knee was 37% impaired, but only 8.75% of the impairment was attributable to Peterman's work injury.[2]

After an evidentiary hearing, the deputy commissioner found "valid points . . . made [by] both sides" and averaged the two proposed impairment ratings for the purposes of determining Peterman's level of permanent disability to his right knee. The deputy commissioner increased Peterman's permanent disability benefits, finding he had incurred a 21.5% permanent loss of the use of his right leg.[3] Springfield Pest appealed to the full Commission, which affirmed the deputy commissioner's finding.

On appeal, Springfield Pest argues that the Commission erred by calculating the impairment rating of Peterman's right leg *after* his total knee replacement surgery, asserting that

---

[2] Dr. Tepper attributed the remaining 28.25% impairment of Peterman's knee to unrelated preexisting medical conditions.

[3] The deputy commissioner initially awarded Peterman benefits based on a 34.25% impairment of his right leg. Springfield Pest challenged the deputy commissioner's calculation of this average in its request for reconsideration. The deputy commissioner issued an amended opinion recalculating the average of the impairment ratings.

the Supreme Court of Virginia has interpreted the Workers' Compensation Act as requiring permanent loss of use of a joint to be measured *before* joint replacement surgery in permanent partial disability claims. Springfield Pest also argues that the evidence is insufficient to support the Commission's finding that Peterman's knee impairment increased after the knee replacement surgery. We disagree and affirm the decision of the Workers' Compensation Commission.

ANALYSIS

I. An impairment rating does not need to be measured before joint replacement surgery under Code § 65.2-503.

"Under well-established principles, an issue of statutory interpretation is a pure question of law which we review de novo." *Richardson*, 298 Va. at 532 (quoting *Conyers v. Martial Arts World of Richmond, Inc.*, 273 Va. 96, 104 (2007)).

The Virginia Workers' Compensation Act provides claimants an avenue to receive compensation for permanent partial loss and disfigurement. Code § 65.2-503. To become eligible for permanent partial disability, "it must appear both that the partial incapacity is permanent and that the injury has reached maximum medical improvement." *Cnty. of Spotsylvania v. Hart*, 218 Va. 565, 568 (1977). The claimant bears the burden of proving the level of impairment. *See Hungerford Mech. Corp. v. Hobson*, 11 Va. App. 675, 677-78 (1991).

It is not disputed that Peterman reached maximum medical improvement and suffers a ratable degree of permanent impairment. At issue here is whether Peterman's impairment should be rated before or after his total knee replacement surgery. Relying on *Richardson*, Springfield Pest asserts that the Commission may *only* award permanent partial disability based on an

impairment rating calculated before joint replacement surgery.[4] We disagree, as Springfield Pest misunderstands what *Richardson* stands for.

In *Richardson*, the Commission addressed the claim of a firefighter who had undergone hip replacement due to an injury sustained on the job. Prior to the hip replacement, Richardson's loss-of-use rating was 74%. *Richardson*, 298 Va. at 531. Following the replacement, his impairment rating was 11%. *Id.* Richardson initially filed a workers' compensation benefits claim based on the post-replacement 11% loss-of-use rating, but subsequently amended the claim to reflect the 74% loss-of-use rating received prior to the surgery. *Id.* at 531-32. A deputy commissioner awarded Richardson permanent partial disability benefits, concluding that the proper measure for Richardson's loss of use was the rating made prior to the replacement. *Id.* at 531. The deputy commissioner reduced the initial 74% loss-of-use rating to 49% after determining that certain conditions should not have been included in the rating. Richardson's employer, Loudoun County, appealed to the full Commission, and Richardson filed a cross-appeal challenging the reduction of the loss-of-use rating. *Id.* The Commission unanimously affirmed the decision of the deputy commissioner and granted Richardson's cross-appeal, modifying the award to reflect the initial 74% loss-of-use rating. *Id.* The case reached our Supreme Court, which, in interpreting Code § 65.2-503, affirmed the Commission's decision. *Id.* at 532.

Loudoun County argued that the Commission erred by basing Richardson's award on the impairment rating given prior to the corrective surgery. Instead, Loudoun County asserted that

---

[4] At oral argument, Springfield Pest, for the first time, adopted an argument claiming that the Commission would need a "closer in time" pre-surgery impairment rating for it to be proper for the Commission to have used Peterman's post-surgery impairment rating in calculating his disability benefits. Regardless of the merits of this argument, it is waived. Where an appellant does not raise the issue as an assignment of error on appeal, did not argue it in the Commission, nor on brief, the appellate court cannot consider the argument on appeal. *See* Rule 5A:18.

the proper impairment rating to have considered was the impairment rating Richardson obtained following the corrective surgery since "maximum medical improvement can only be determined after undergoing an available corrective surgery." *Id.* at 538 n.3. Our Supreme Court disagreed, but not in the way Springfield Pest asserts that it did. While it was appropriate for the Commission to consider the pre-surgery impairment rating in *Richardson*, the Court did not hold that the Commission *must only* consider the pre-surgery impairment rating when awarding permanent partial disability benefits.

The *Richardson* Court upheld the Commission's award of permanent partial disability benefits for the loss of use measured before the joint replacement surgery, as this application "acknowledges the irreplaceable loss of the claimant's natural joint, the nonmonetary costs associated with the corrective surgery, and the permanent restrictions on the claimant's activities resulting from the work-related injury." *Id.* at 537. The *Richardson* Court did not expressly limit the Commission to only considering a pre-surgery loss-of-use rating for permanent partial disability benefits.

While awarding compensation based on a pre-surgery loss-of-use rating "recognizes that a work-related injury has permanently deprived that claimant of natural functionality," an award based on that rating presupposes that the corrective surgery improved the employee's condition. *See Richardson*, 298 Va. at 530 (finding pre-surgery loss-of use-calculation appropriate where claimant's condition improved from 74% loss-of-use to 11% loss-of-use); *Creative Dimensions Grp. Inc. v. Hill*, 16 Va. App. 439, 441 (1993) (finding pre-surgery loss-of-use calculation appropriate where claimant's vision improved significantly following an intraocular lens implant). The *Richardson* Court rejected the employer's argument that the loss-of-use *must* be calculated following corrective surgery. The *Richardson* Court noted that joint replacement surgery had a high risk of failure, eliminated the natural joint's ability to heal, and presented

numerous other possible complications, holding that "[r]equiring that loss of use be measured only after corrective surgery would omit these intangible costs from the compensation calculation." *Richardson*, 298 Va. at 537. The *Richardson* Court clarified that a disability benefits award *can* be based on pre-surgery loss-of-use calculations. Where a claimant's condition *worsens* following a corrective surgery, however, the statute necessitates a different calculation to effectuate Code § 65.2-503's remedial purpose. The Workers' Compensation Commission has consistently used a post-surgery loss-of-use rating in situations similar to Peterman's.

The purpose of the Workers' Compensation Act is to protect employees, and courts construe it in a manner effectuating this remedial purpose. *See*, *e.g.*, *Richardson*, 298 Va. at 535; *E.I. du Pont de Nemours & Co. v. Eggleston*, 264 Va. 13, 17 (2002); *Ellis v. Commonwealth Dep't of Highways*, 182 Va. 293, 303 (1944). Notably, following *Richardson*, the Commission decided *Schoenly v. Loudoun Stairs*, JCN No. 00001453708 (Va. Workers Comp. Comm'n Jan. 18, 2022).[5] In *Schoenly*, the claimant underwent a right knee replacement surgery and filed an application seeking 50% permanent partial disability based on a rating assigned *after* the surgery. *Id.* at 1-2. The employer argued that, based on *Richardson*, the proper rating was limited to 2% loss-of-use assigned prior to the surgery. *Id.* at 2. The employer also cited *Rowe v. Dycom Indus., Inc.*, VWC No. 179-38-18 (Va. Workers Comp. Comm'n Apr. 24, 2002), where a claimant submitted to knee replacement surgery and sought an award of permanent partial disability benefits based upon his pre-surgery loss of use. The *Rowe* Commission agreed, recognizing that although the knee replacement provided the claimant "the opportunity to improve beyond the body's natural ability to heal itself," *Hill*'s holding controls and that

_____

[5] While the Commission's decisions are not binding on this Court, such decisions are highly informative as indicative of the Commission's longstanding practice.

impairment ratings should be based on the claimant's condition before the "artificial device" was implanted. *Id.*at 4 (citing *Hill*, 16 Va. App. at 446).

The *Schoenly* Commission rejected these arguments, stating that "[a]s was the case in *Richardson* and *Rowe*, the claimant submitted to the implantation of a prosthetic orthopedic device. There, the similarity ends." *Schoenly*, slip op. at 5. The same is true here. The Commission recognized that Schoenly's total knee replacement did not result in an improvement of his condition, but instead resulted in greater impairment. Relying on its own precedent, the Commission acknowledged that, under such circumstances, a different means of calculating the permanent impairment is necessary.

In *Groover v. Bell Atlantic VA., Inc.*, VWC No. 173-16-00 (Va. Workers Comp. Comm'n Oct. 6, 2004), the claimant was assessed with a 20% loss of use, then submitted to a total right knee replacement, and, following the surgery, was assessed with a 30% loss of use. The employer argued the benefits should have been based on the pre-surgery loss of use, relying on *Rowe*, and the Commission rejected this argument, holding that:

> [T]he claimant's condition in this case actually deteriorated as a result of his knee replacement surgery. We agree with the Deputy Commissioner's conclusion that an award of permanent impairment under Code § 65.2-503 of the Act should reflect the true measure of the claimant's disability resulting from his industrial accident—*even if a portion of such disability is attributable to corrective surgery.*

*Id.* at 5-6 (emphasis added).

In *Perkins v. Paramount Coal Corp.*, VWC No. 187-95-91 (Va. Workers Comp. Comm'n Nov. 1, 2005), the claimant was initially assessed with a 15% impairment, but, following surgery, his impairment rating was assessed at 50%. Citing *Groover*, the Commission held that the claimant was entitled to benefits for the increase in his impairment following the surgery. *Id.* at 5. The Commission explained that "[t]o ignore the increased disability would be contrary to

the intention of Code § 65.2-503." *Id.* We agree. Where a claimant's impairment worsens following a corrective surgery, the Commission is correct in using the post-surgery impairment rating when awarding permanent partial disability benefits under Code § 65.2-503. Consequently, the Commission did not err when it used the post-surgery loss-of-use rating to calculate Peterman's disability benefits.

II. The evidence was sufficient to support the Commission's finding that Peterman's knee impairment increased after the knee replacement surgery.

Springfield Pest's second argument is that the Commission erred in finding that the claimant's right knee worsened following the total knee replacement. Springfield Pest does not assert a claim of insufficient evidence, but rather attempts to reweigh the evidence presented. This assignment of error is without merit.

"On appeal, the appellant bears 'the "burden of showing" that the Commission committed "reversable error."'" *LKQ Corp. v. Morales*, 78 Va. App. 158, 163 (2023) (quoting *Jones v. Crothall Laundry*, 69 Va. App. 767, 774 (2019)). Decisions of the Commission are "conclusive and binding as to all questions of fact." Code § 65.2-706(A). "Consequently, on appeal, 'we do not retry the facts before the Commission nor do we review the weight, preponderance of the evidence, or the credibility of witnesses.'" *Jeffreys v. Uninsured Emp. Fund*, 297 Va. 82, 87 (2019) (quoting *Caskey v. Dan River Mills, Inc.*, 225 Va. 405, 411 (1983)). Instead, "we are bound by the [C]ommission's findings of fact as long as 'there was credible evidence presented such that a reasonable mind *could* conclude that the fact in issue was proved,' even if there is evidence in the record that would support a contrary finding." *Artis v. Ottenberg's Bakers, Inc.*, 45 Va. App. 72, 83-84 (2005) (en banc) (quoting *Westmoreland Coal Co. v. Campbell*, 7 Va. App. 217, 222 (1988) (emphasis in original)).

Springfield Pest points to Dr. Tepper's opinion that Peterman had "a good result" from his total knee replacement as evidence that Peterman's knee did not worsen after the surgery.

- 8 -

Springfield Pest also acknowledges that this interpretation of Dr. Tepper's statement contradicts both Dr. Salter's opinion that Peterman's impairment increased and Peterman's own testimony regarding the worsening of his condition following the surgery. The appellate standard of review regarding the Virginia Workers' Compensation Commission's factual findings is limiting. This Court is bound by the Commission's factual findings, so long as there was credible evidence presented such that a reasonable mind could conclude the fact was proved, even where there is evidence in the record that would support a contrary finding. *Artis*, 45 Va. App. at 83-84. Both Dr. Salter's opinion and Peterman's testimony constituted credible evidence, which the Commission was empowered to believe over other evidence presented, and thus it was not in error for the Commission to find that Peterman's condition worsened by giving greater weight to the credible evidence that supported that finding.

Furthermore, Springfield Pest advances the argument that Peterman's testimony that his knee replacement surgery was "successful" should be construed to mean that he did not sustain any additional impairment because of the surgery. This is unpersuasive. Again, Springfield Pest asks us to reweigh the credible evidence presented to the Commission.

In addition to Peterman's testimony that the surgery was "successful," Peterman testified that his knee was worse following the surgery than before. Common sense leads us to conclude that a person may have a successful procedure that nevertheless fails to improve his function. Additionally, as above, both statements constitute credible evidence from which the Commission drew its factual findings. The Commission did not abuse its discretion by finding that Peterman's condition worsened based on this testimony.

Lastly, Springfield Pest contends that there was no evidence of impairment prior to the total knee replacement for gauging whether Peterman's condition worsened following the surgery. Specifically, Springfield Pest claims that Peterman's September 5, 2019 8.75%

impairment rating is insufficient evidence to find that Peterman's condition had worsened. Again, this argument defies common sense. The Commission's finding based on Dr. Salter's post-surgery rating combined with Peterman's testimony that he never returned to full duty and that he sought corrective surgery constitutes credible evidence upon which the Commission could find that Peterman's condition worsened.

In short, the Commission properly considered credible evidence and made permissible factual findings regarding Peterman's worsened condition in awarding him greater disability benefits.

## CONCLUSION

The Commission's use of Peterman's post-surgery impairment rating to award increased disability benefits was proper under Code § 65.2-503. Code § 65.2-503 necessitates that a claimant's award reflects the true measure of his disability resulting from his industrial accident, even if a portion of such disability is attributable to corrective surgery. Additionally, there was sufficient evidence for the Commission to conclude that Peterman's condition worsened following the surgery. Accordingly, we affirm.

*Affirmed.*