COURT OF APPEALS OF VIRGINIA


Present: Judges Frank, Beales and Powell
Argued at Richmond, Virginia


FRANK A. MONTALBANO

OPINION BY
v.      Record No. 0348-10-2      JUDGE ROBERT P. FRANK
NOVEMBER 16, 2010

RICHMOND FORD, LLC, VADA GROUP
  SELF-INSURANCE ASSOCIATION
  AND PMA MANAGEMENT CORPORATION


FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

David G. Browne (Meyer, Goergen, & Marrs, P.C., on brief), for
appellant.

Angela F. Gibbs (Frederick T. Schubert, II; Midkiff, Muncie & Ross,
P.C., on brief), for appellees.


Frank A. Montalbano, claimant, appeals a decision of the Virginia Workers'

Compensation Commission (commission), that denied him benefits, finding that his termination

from employment was for justified cause. Claimant also contends the commission erred in

finding he is not entitled to an award of permanent partial disability based upon a 46%

impairment rating to his right arm. For the reasons stated, we affirm the decision of the

commission.

BACKGROUND

On July 28, 2006, claimant sustained a compensable injury by accident to both wrists. As

a result, he received various disability awards, the last being a temporary partial disability award

beginning November 29, 2007.

Claimant's August 26, 2008 claim seeking permanent partial disability was defended by Richmond Ford, LLC (employer), which alleged claimant refused selective employment and/or was terminated from light duty for justified cause on July 28, 2008.

Claimant had worked for employer for 23 years prior to the compensable injury, approximately 15 or 16 years as an auto technician and approximately six years as a group leader.

After wrist fusion surgery, claimant accepted a light-duty job in June 2007, working for employer in the detail shop. Several months later, he was promoted to manager of that shop, supervising between six and ten people. Claimant testified he was given no job description or training for that position. In his previous capacity with employer, he had no authority to discipline employees, although as manager of the detail shop, he had full authority to hire, discipline, and discharge employees under his supervision.

Employer had a written policy prohibiting harassment, which stated in part:

> Richmond Ford, LLC does not and will not tolerate harassment of our employees. The term "harassment" includes, but is not limited to: slurs, jokes, and other verbal, graphic, or physical conduct relating to an individual's race, color, sex, religion, national origin, citizenship, age or handicap. "Harassment" also includes sexual advances, request for sexual favors, unwelcome or offensive touching, and other verbal, graphic, or physical conduct of a sexual nature.
>
> VIOLATION OF THIS POLICY WILL SUBJECT AN EMPLOYEE TO DISCIPLINARY ACTION, UP TO AND INCLUDING IMMEDIATE DISCHARGE.

Claimant indicated he had signed this policy statement on February 2, 2003 and admitted attending a presentation in January 2008 entitled, "Maintaining Respect in the Workplace: Understanding and Prevent [sic] Harassment."

Claimant testified he understood he was not to verbally embarrass or humiliate his employees, yet he stated his managers cursed and belittled him with impunity. He testified this

behavior prevailed throughout the entire dealership. He related several incidents where his supervisor, Mark Higgins, cursed at him. On another occasion, according to claimant, the commercial truck manager cursed at claimant while a customer was present. Claimant was not aware of any disciplinary action taken concerning these incidents.

Mark Higgins, claimant's immediate supervisor, related an incident from April 2008 where an employee came to Higgins, crying and shaking because claimant had screamed at him. That employee was so upset by claimant's behavior that he could no longer work that day. Higgins characterized the employee as "destroyed" by claimant's verbal attack. Higgins counseled claimant about his conduct, advising claimant to control himself. Higgins indicated claimant admitted he had an "anger control" problem. Higgins warned claimant that his behavior was considered harassment and intimidation. Higgins also told claimant that if such behavior continued, his job would be in jeopardy. He suggested claimant seek professional help. Higgins related another incident, occurring in June 2006, when claimant screamed at another one of his employees.

At the hearing before the deputy, claimant admitted he had been counseled on at least two occasions by his supervisor, Mark Higgins, regarding improper treatment of employees under claimant's supervision. Specifically, claimant was to "watch" what he said to his employees.

Sometime prior to July 25, 2008, claimant had a confrontation with S.L. The encounter caused S.L. to be upset and visibly shaken. S.L. told Higgins he could not work in that environment, and Higgins allowed S.L. to leave work for the day. Claimant explained that he only raised his voice because of the noise level in the shop. Higgins counseled claimant about this incident.

On July 25, 2008, claimant returned to the detail shop from another assignment and found his employees not working. He admonished them to return to work. Later that day, claimant and

S.L. argued as to a missing part of a tool. S.L. testified that during this argument, claimant lost his temper and said S.L. was "nothing but a mother – f- common dog." Claimant admitted calling S.L. a "common dog" but denied using the expletive. Claimant later apologized to S.L.

Claimant was discharged on July 28, 2008 for harassing his co-workers. The employer's "termination report" indicated claimant's supervisor had received numerous complaints about claimant verbally harassing other employees and that claimant had a temper control issue. The report said claimant had been counseled "numerous times" concerning his treatment of his employees and was told such conduct would not be tolerated. The report then recited claimant's July 25 confrontation with S.L.

The deputy commissioner found that claimant was terminated for "justified cause" because his actions were "so recurrent as to manifest a willful disregard of those interests and the duties and obligations he owes to his employer."

The full commission affirmed the deputy, finding claimant was terminated for violating employer's policy against verbal harassment of other employees. It further found claimant had been verbally counseled on at least two occasions about the use of profanity, yelling and screaming at his employees, and had failed to reform his behavior. The commission found claimant's wage loss was properly attributable to his wrongful acts and concluded that claimant was responsible for those wrongful actions.

Claimant had previously sustained a compensable injury to both wrists on July 28, 2006. In his claim for benefits, claimant described his injury as the hyperextension of both wrists. Claimant was treated by Dr. John E. Blank, an orthopedist. Dr. Blank diagnosed claimant with a right greater than left wrist scapholunate ligament tear, triangle fibrocartilage tear, and osseous wrist bone contusions. Dr. Blank performed several surgeries on claimant's right wrist to repair

- 4 -

the injury and to relieve pain. On June 5, 2008, claimant underwent a functional capacity evaluation (FCE) and impairment rating.

On June 12, 2008, Dr. Blank reviewed the FCE and permanent rating evaluation. He opined that the permanent impairment rating confirmed that "he has 22% loss of the right hand and 30% loss of the right wrist, 2% loss of the right elbow, which converts to 46% impairment of the right upper extremity and 28% impairment of the whole person with 0% impairment of the left upper extremity." Dr. Blank concluded that claimant made a valid effort at the FCE and was found to be capable of occasionally lifting up to 30 pounds, pushing, pulling, and carrying.

Dr. Blank, in a questionnaire completed on October 23, 2008, opined that claimant had reached maximum medical improvement with respect to his right upper extremity injury of July 28, 2006. He stated that the claimant's fusion plate could be removed in the future if symptomatic, but there were no current plans for additional surgical treatment. He agreed that the claimant has a 46% permanent disability rating to his right upper extremity as a result of the July 28, 2006 work accident. Dr. Blank concluded that claimant could not return to his pre-injury job as an auto mechanic, noting that appellant is only capable of performing medium, not heavy, physical work.

Dr. Stephen Leibovic, an independent medical examiner, performed an examination of the claimant on December 2, 2008. Dr. Leibovic reviewed claimant's medical records and performed an x-ray. He was not certain that the wrist was completely fused, and he believed that the claimant was suffering from extensor tendon tendonitis over the plate. He stated, "I believe if we can prove that the fusion is healed completely that the plate should be removed." He thought this would provide additional comfort and at the same time "a radial styloidectomy should be performed."

Dr. Leibovic further opined that the claimant had not yet reached maximum medical improvement. He believed it prudent to assess the integrity of the fusion and then remove the plate when indicated, as well as performing the radial styloidectomy. He assessed the claimant as having a 45% permanent partial impairment rating of the right upper extremity as a result of the July 28, 2006 injury, based upon his wrist fusion, his limited digital range of motion, and in part on his decrease in strength. He recommended that the claimant lift no more than 15 pounds with his right hand.

Dr. Blank reviewed Dr. Leibovic's report and indicated a radial styloidectomy might relieve claimant's pain but would not guarantee functional improvement. Dr. Blank continued to favor waiting 18-24 months before considering the procedure.

The commission denied claimant permanent partial disability benefits, concluding:

> On review we find that the evidence is in equipoise about whether the claimant has reached maximum medical improvement, with Dr. Leibovic stating that the claimant has not yet reached MMI after four wrist surgeries, and Dr. Blank stating that he has. The claimant had not borne his burden of proof of maximum medical improvement. His claim is held in abeyance.

This appeal follows.

ANALYSIS

Termination for Justified Cause

On appeal, claimant advances a number of reasons why his termination was not "justified." He argues that he did not violate the company policy against harassment since that policy was limited to harassment based on race, national origin, or sex, that his behavior was the norm in his workplace, that even if the policy encompassed abusive language, that policy was not enforced by employer, and that his behavior on July 25, 2008 was an isolated act.

"On appeal from a decision of the Workers' Compensation Commission, the evidence and all reasonable inferences that may be drawn from that evidence are viewed in the light most

favorable to the party prevailing below." Artis v. Ottenberg's Bakers, Inc., 45 Va. App. 72, 83, 608 S.E.2d 512, 517 (2005) (*en banc*). Furthermore, "we are bound by the commission's findings of fact as long as 'there was credible evidence presented such that a reasonable mind *could* conclude that the fact in issue was proved,' even if there is evidence in the record that would support a contrary finding." Id. at 83-84, 608 S.E.2d at 517 (quoting Westmoreland Coal Co. v. Campbell, 7 Va. App. 217, 222, 372 S.E.2d 411, 415 (1988)). However, "we review questions of law *de novo*." Rusty's Welding Serv., Inc. v. Gibson, 29 Va. App. 119, 127, 510 S.E.2d 255, 259 (1999).

"[A]n employee on selective employment offered or procured by the employer, who is discharged for cause and for reasons not concerning the disability, forfeits his or her right to compensation benefits like any other employee who loses employment benefits when discharged for cause." Timbrook v. O'Sullivan Corp., 17 Va. App. 594, 597, 439 S.E.2d 873, 875 (1994); see also Marval Poultry Co. v. Johnson, 224 Va. 597, 601, 299 S.E.2d 343, 345 (1983). The rationale behind this rule is that "[t]he employee is responsible for that loss and not the employer." Chesapeake & Potomac Tel. Co. v. Murphy, 12 Va. App. 633, 640, 406 S.E.2d 190, 193 (1991). However, "[a]n employee's workers' compensation benefits will be permanently forfeited only when the employee's dismissal is 'justified,' the same as any other employee who forfeits her employment benefits when discharged for a 'justified' reason." Eppling v. Schultz Dining Programs, 18 Va. App. 125, 128, 442 S.E.2d 219, 221 (1994).

Eppling distinguished termination for "justified cause" and termination for "cause." Eppling was terminated for absenteeism caused by non-work-related health problems. The issue

was whether Eppling could "cure" her "refusal" of selective employment,[1] thus allowing her to receive benefits. Finding Eppling's termination was not a "justified cause," we held:

> A "justified" discharge (one which warrants forever barring reinstatement of workers' compensation benefits) does not simply mean that the employer can identify or assign a reason attributable to the employee as the cause for his or her being discharged. Whether the reason for the discharge is for "cause," see Murphy, 12 Va. App. at 639, 406 S.E.2d at 193, or is "justified" for purposes of forfeiting benefits must be determined in the context of the purpose of the [Virginia Workers' Compensation] Act and whether the conduct is of such a nature that it warrants a permanent forfeiture of those rights and benefits. [T]he Commission . . . must be mindful of the purposes and goals of the Act. [Richmond Cold Storage Co. v.] Burton, 1 Va. App. [106,] 111, 335 S.E.2d [847,] 850 [(1985)].

Id. (internal quotations omitted).

We concluded that while Eppling's employer had "cause" for termination, her absences were due to health problems, and not due to "wrongful acts" that "justified" her dismissal so as to permanently bar her from benefits.[2]

"[I]t is not necessary to prove 'that the employee's wrongful act was intentional, willful, or deliberate in order to justify a termination for cause and a forfeiture of compensation benefits.'" Artis, 45 Va. App. at 85, 608 S.E.2d at 518 (quoting Walter Reed Convalescent Ctr. v. Reese, 24 Va. App. 328, 336-37, 482 S.E.2d 92, 97 (1997)). "Rather, all that is required is a

---

[1] Being terminated for cause is the equivalent of refusing selective employment. See Artis, 45 Va. App. at 91, 608 S.E.2d at 521 ("A disabled employee who engages in voluntary misconduct is deemed to have constructively refused an offer of selective employment, thereby justifying a forfeiture of benefits.").

[2] Virginia courts have considered various acts which provide "justified" cause for termination. See Marval Poultry, 224 Va. App. 597, 299 S.E.2d 343 (finding that dishonesty provided justified cause); Goodyear Tire & Rubber Co. v. Watson, 219 Va. 830, 252 S.E.2d 310 (1977) (holding that frequent absences, poor work performance and attitude gave justified cause); Artis, 45 Va. App. 72, 608 S.E.2d 512 (concluding that staging a robbery and committing attempted murder equaled justified cause); Richfood v. Williams, 20 Va. App. 404, 457 S.E.2d 417 (1995) (ruling that the failure to pass a drug test upon which employment was conditioned provided justified cause).

showing:  (1) that the wage loss is 'properly attributable' to the wrongful act;[3] and (2) that the employee is 'responsible' for that wrongful act."  Id. (quoting Reese, 24 Va. App. at 336, 482 S.E.2d at 97).

Our inquiry, then, is whether claimant's continued harassment of his subordinates, including repetitive abusive language, constitutes "justified cause" for termination thus barring any award of benefits.

We find it does.  In the context of unemployment benefits, we have addressed factors to determine whether abusive language constitutes willful misconduct.

> Such factors include the severity of the language used; the quantity of the language used, i.e., whether it was a lengthy barrage or a brief incident; whether the language was spoken in the presence of customers, clients or other employees; whether the employee had a record of misconduct; whether prior warnings were given regarding employee's conduct; and whether the language was provoked by the employer.

Kennedy's Piggly Wiggly Stores v. Cooper, 14 Va. App. 701, 706, 419 S.E.2d 278, 281 (1992) (citations omitted).

We find these factors are equally applicable in evaluating whether abusive language is "justified cause" for termination.  Here, claimant's outbursts were not isolated or provoked.  He had been counseled on his inappropriate behavior and had, in fact, been warned that termination could result for continued behavior.  Further, this language, on more than one occasion, had great impact on his subordinates' ability to perform their jobs.  The fact that no customers heard these outbursts does not, under these facts, mitigate his behavior.

---

[3] Claimant does not claim that he was terminated because of any disability related to the compensable injury.

We therefore conclude that claimant's repetitive harassment of his subordinates through anger and abusive language was "justified cause" for his termination, thereby justifying a forfeiture of benefits.

Claimant further maintains because his behavior was not "misconduct" under Murphy, he is not barred from receiving benefits because he "cured" his "refusal" of selective employment under Code § 65.2-510.[4] Since we have determined claimant was terminated for "justified cause," he cannot "cure" his "refusal" of selective employment.

Claimant also argues he violated no company policy because the written policy is limited to harassment based on race, color, sex, religion, national origin, citizenship, age or handicap. This contention ignores the clear language in the written policy that prohibits all harassment. The policy states that "[t]he term harassment includes but is not limited to . . ." and then provides specific language prohibiting harassment based on race, color, etc. The latter phrase does not limit the prohibition on all harassment. Additionally, claimant was counseled several times on harassment and his use of abusive language. The commission properly concluded claimant was terminated for violating company policy against harassment.

---

[4] Code § 65.2-510 states in part:

> A.  If an injured employee refuses employment procured for him suitable to his capacity, he shall only be entitled to the benefits provided for in §§ 65.2-503 and 65.2-603, excluding vocational rehabilitation services provided for in subdivision A 3 of § 65.2-603, during the continuance of such refusal, unless in the opinion of the Commission such refusal was justified.

> B.  If an injured employee cures his unjustified refusal by accepting employment suitable to his capacity at a wage less than that originally offered, the employer shall pay or cause to be paid to the injured employee during his partial incapacity pursuant to § 65.2-502, a weekly compensation equal to 66 2/3 percent of the difference between his average weekly wages before his injury and the average weekly wage the employee would have earned by accepting the original proffered light duty employment.

Next, claimant contends even if he violated company policy this policy was not enforced because others used abusive language and such language was the norm in the workplace. However, claimant, in his brief, never developed this argument nor cited any cases to support that position.[5] Rule 5A:20 requires that an appellant's opening brief contain the "principles of law, the argument, and the authorities relating to each question presented." Pursuant to that rule, we have held that "[u]nsupported assertions of error 'do not merit appellate consideration.'" Jones v. Commonwealth, 51 Va. App. 730, 734, 660 S.E.2d 343, 345 (2008) (quoting Buchanan v. Buchanan, 14 Va. App. 53, 56, 415 S.E.2d 237, 239 (1992)). Moreover, "when a party's 'failure to strictly adhere to the requirements of Rule 5A:20(e)' is significant, 'the Court of Appeals may . . . treat a question presented as waived.'" Parks v. Parks, 52 Va. App. 663, 664, 666 S.E.2d 547, 548 (2008) (quoting Jay v. Commonwealth, 275 Va. 510, 520, 659 S.E.2d 311, 317 (2008)). We therefore find appellant's failure is significant, and we consider this argument waived.

Finally, appellant argues that because he received no written reprimand, his actions were not sufficient to support termination for "justified cause." Yet, appellant does not dispute that he received a number of oral reprimands. He cites Food Lion v. Newsome, 30 Va. App. 21, 515 S.E.2d 317 (1999), to support his position. However, appellant's argument isolates language in Newsome that has no bearing on his position. In determining Newsome had cured his refusal of selective employment, this Court, in reciting background facts, stated that Newsome had received six "constructive advice" memos. Whether the reprimands were oral or written was not part of the Newsome analysis. Therefore, appellant cites no relevant case law to support his contention that reprimands must be written. See Rule 5A:20(e).

---

[5] At oral argument, appellant conceded that he did not develop this specific argument in his brief.

Permanent Partial Disability

Claimant contends the commission erred in finding he is not entitled to an award of permanent partial disability.[6]  Specifically, he maintains the commission erroneously concluded he did not prove he had reached maximum medical improvement.[7]

Permanent partial disability benefits are "not awardable 'until the injury has reached a state of permanency, i.e. maximum improvement, when the degree of loss may be medically ascertained.'"  Brown v. United Airlines, Inc., 34 Va. App. 273, 277, 540 S.E.2d 521, 523 (2001) (quoting County of Spotsylvania v. Hart, 218 Va. 565, 568, 238 S.E.2d 813, 815 (1977)).  "[I[t must appear both that the partial incapacity is permanent and that the injury has reached maximum medical improvement."  Id.

"[A]n employee has reached maximum medical improvement if no reasonable expectation exists that the employee will obtain further functional improvement from medical treatment, even though the injury remains symptomatic and disabling."  Gunst v. Childress, 29 Va. App. 701, 707, 514 S.E.2d 383, 386 (1999).

The commission's determination whether maximum medical improvement has been reached is a factual finding.  See Cafaro Construction Co. v. Struther, 15 Va. App. 656, 660, 426 S.E.2d 489, 492 (1993).  Pursuant to statute, the commission's factual findings are conclusive and binding on this Court when those findings are based on credible evidence.  See Code § 65.2-706; McCaskey v. Patrick Henry Hospital, 225 Va. 413, 415, 304 S.E.2d 1, 2 (1983).  In

---

[6] Termination for "justified cause" does not bar a claimant from an award of permanent partial disability.  See Code § 65.2-503.

[7] While the deputy denied permanent partial disability because claimant's injury was limited to his right wrist, and not to his right upper extremity, the commission's review opinion did not address that aspect of the deputy's opinion.  The only issue before this Court is whether claimant met his burden to show he has achieved maximum medical improvement.  We cannot consider alleged error on a ruling the commission never made.  See Paul Johnson Plastering v. Johnson, 265 Va. 237, 243 n.4, 576 S.E.2d 447, 451 n.4 (2003).

conducting our review, "we are required to construe the evidence in the light most favorable to the party who prevailed before the commission." Gunst, 29 Va. App. at 707, 514 S.E.2d at 386 (citing Crisp v. Brown's Tysons Corner Dodge, Inc., 1 Va. App. 503, 504, 339 S.E.2d 916, 916 (1986)).

The claimant has the burden of proving maximum medical improvement. See Mercy Tidewater Ambulance Service v. Carpenter, 29 Va. App. 218, 228, 511 S.E.2d 418, 422 (1999) ("because claimant failed to show that he had reached maximum medical improvement, the commission was precluded from determining claimant's permanent loss of function"). The commission had no authority to make an award for permanent injury without medical evidence that claimant had achieved maximum medical improvement. See id. (citing Hart, 218 Va. at 568, 238 S.E.2d at 815).

> The term "burden of proof" actually refers to two separate burdens: the burden of producing evidence and the burden of persuasion. When a party has the burden of producing evidence on an issue, that party should receive an adverse ruling on the issue as a matter of law unless he or she produces evidence which a reasonable mind *could* accept as proof of the fact in issue. If the party with the burden of production meets this standard, he or she is entitled to have the finder of fact then determine whether he or she has met the applicable burden of persuasion. In the paradigm civil case, there is no special burden of production (the proponent of the issue simply must produce evidence sufficient to support a finding on that issue), and the burden of persuasion is proof by a preponderance of the evidence. See generally Bacon v. Bacon, 3 Va. App. 484, 488, 351 S.E.2d 37, 39-40 (1986).

Campbell, 7 Va. App. at 222, 372 S.E.2d at 415 (emphasis in original).

The commission found the conflicting medical testimony as to whether claimant had reached maximum medical improvement was in equipoise. See Haskins v. Commonwealth, 44 Va. App. 1, 9-10, 602 S.E.2d 402, 406 (2004) (defining equipoise as when the facts are "equally susceptible to two or more constructions" (citing Williams v. Commonwealth, 193 Va. 764, 772,

71 S.E.2d 73, 77 (1952))). In this case, the commission concluded claimant failed to meet his burden of proof. We find no error in this ruling.

Clearly, claimant met his burden of production. Dr. Blank opined that claimant had achieved maximum medical improvement. However, the commission found claimant had not met his burden of persuasion. Claimant did not convince the fact finder that Dr. Blank's opinion was more credible or should have been afforded more weight than Dr. Leibovic's opinion.

> The determination whether the employer has met this burden is made by the [c]ommission after exercising its role as finder of fact. In this role, the [c]ommission resolves all conflicts in the evidence and determines the weight to be accorded the various evidentiary submissions. "The award of the [c]ommission . . . shall be conclusive and binding as to all questions of fact." Code § 65.2-706(A); Falls Church Constr. Co. v. Laidler, 254 Va. 474, 478-79, 493 S.E.2d 521, 524 (1997); Ivey v. Puckett Constr. Co., 230 Va. 486, 488, 338 S.E.2d 640, 641 (1986).

Bass v. City of Richmond Police Dep't., 258 Va. 103, 114, 515 S.E.2d 557, 563 (1999).

Claimant was unable to convince the commission that his medical evidence should be afforded greater weight than the conflicting medical testimony presented by employer. Therefore, he failed to carry his burden of persuasion.

Nonetheless, claimant asserts that the commission misinterprets Dr. Leibovic's independent medical examination opinion that suggested the possibility of further treatment. Claimant argues the commission ignored that the proposed treatment suggested by Dr. Leibovic would not improve claimant's function of his upper extremity, but would only relieve pain. Therefore, there is no evidence, claimant argues, that functional improvement will ever result from any future treatment. Thus, claimant concludes, the evidence is not in equipoise.

This position is belied by Dr. Leibovic's opinion. Claimant's argument is premised on a selection of isolated statements. Dr. Leibovic noted an enlargement and a bone spur at the radial styloid, suggesting the need for a radial styloidectomy. He also opined that if the fusion is

- 14 -

complete, the fusion plate should be removed, thus providing "additional comfort." Dr. Leibovic concluded that he did not believe claimant had reached maximum medical improvement.

Interestingly, in Dr. Blank's response to Dr. Leibovic's opinion, he agrees with Dr. Leibovic that removal of the fusion plate would "help with extreme tendonitis symptoms." When asked whether radial styloidectomy would result in any significant functional improvement, Dr. Blank answered, "pain relief perhaps, but unable to guarantee functional improvement." In any event, he indicated he favored waiting 18-24 months before performing either procedure.

Dr. Blank did not opine the radial styloidectomy would not result in any significant functional improvement, only that he could not guarantee that result. Therefore, he did not refute Dr. Leibovic's opinion that claimant had not reached maximum medical improvement.

There was evidence to support the medical opinions of both doctors. As the evidence was in equipoise, we find the commission did not err in concluding claimant failed to meet his burden of proof.

Because claimant has not proven maximum medical improvement, an award of permanent partial disability is premature. This issue is left open for future determination. See Carpenter, 29 Va. App. at 228, 511 S.E.2d at 423.

### CONCLUSION

The commission did not err in denying claimant benefits. The commission correctly upheld the deputy commissioner's determination that claimant was terminated for justified cause. The commission also properly concluded that claimant did not prove he had achieved maximum medical improvement. We therefore affirm the commission.

Affirmed.

- 15 -