COURT OF APPEALS OF VIRGINIA

Present: Judges Huff, Ortiz and Friedman
Argued by videoconference

PENINSULA NEUROSURGICAL ASSOCIATES

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 0423-21-1                        JUDGE GLEN A. HUFF
                                                       NOVEMBER 3, 2021

ZIMMERMAN MARINE, INC.,
  COMMERCE AND INDUSTRY INS. CO. AND
  AIG CLAIMS, INC.

            FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Philip J. Geib (Philip J. Geib, P.C., on brief), for appellant.

            Timothy D. Watson (Midkiff, Muncie & Ross, P.C., on brief), for
            appellees.


        Peninsula Neurosurgical Associates ("appellant") appeals from a decision of the

Workers' Compensation Commission (the "Commission") denying appellant's application for

reimbursement from Zimmerman Marine, Inc., Commerce and Industry Ins. Co. and AIG

Claims, Inc. (collectively, "appellee"). The reimbursement that appellant sought was for medical

services it rendered to a workers' compensation claimant who was one of Zimmerman Marine's

former employees.

        In denying appellant's application, the Commission made two judgments relevant to this

appeal. The first was that appellant was not entitled to full, unredacted copies of contracts

between several insurance companies through which access was made to billing and claims

handling networks that ultimately determined the payments due for the medical services rendered

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

in this case. The second was that appellant was appropriately and fully reimbursed pursuant to the terms of a contract it reached with Aetna, Inc., another insurance carrier involved in the facts of this case. Appellant asks this Court to reverse on both issues; but because neither of the Commission's judgments was in error, this Court affirms.

## I. BACKGROUND

"Under settled principles of appellate review, [this Court] consider[s] the evidence in the light most favorable to [appellee] as the prevailing party before the [C]ommission." Layne v. Crist Elec. Contractor, Inc., 64 Va. App. 342, 345 (2015).

*The Medical Insurance Network and the Various Contracts*

This appeal involves a complex network of medical providers, insurers, claims, companies, and data bases. To appropriately contextualize the issues in this appeal, a general description of the pertinent contractual relationships within that network is provided first.

On February 22, 2001, appellant, a medical care provider, entered into a Physician Group Agreement with Aetna, Inc.,[1] a health insurance company that was appellant's primary point of contact whenever appellant sought reimbursement for medical care it rendered to patients in Aetna's network. As relevant to this appeal, paragraph 3.1 of the Physician Group Agreement provided that Aetna would reimburse appellant for appellant's medical services in accordance with an attached "Compensation Schedule" or "in accordance with the compensation arrangement then in effect [at the time of billing]; either of which may be modified from time to time by [Aetna]." Under the Compensation Schedule, appellant agreed to "accept [Aetna's] then current Reasonable Equitable Fee Schedule (REF) as payment in full." Barbara Sciro, Aetna's Senior Network Director for Network Management for Workers' Compensation and Auto Contracting, testified that Aetna would determine what appellant was owed under the contract

---

[1] The Physician Group Agreement was signed by both appellant and Aetna.

- 2 -

and then inform AIG of its billing determination. AIG would in turn provide the payment to appellant pursuant to Aetna's billing determination.

Paragraph 8.2 of the Physician Group Agreement provided that Aetna reserved the right to "introduce new Plans" in the course of appellant and Aetna's arrangement, so long as Aetna provided appellant "ninety (90) days prior written notice of such new Plans." Paragraph 12.13 defined "Plan" as "[a]ny health benefit product, plan or program issued, administered, or serviced by of one of its [Aetna's] Affiliates, including but not limited to, HMO, preferred provider organization, indemnity, Medicaid, Medicare and Workers' Compensation." If Aetna chose to introduce a new plan, appellant would have "thirty (30) days" from its receipt of Aetna's written notice to let Aetna know if it would elect to not participate in the new plan. If appellant did not do so within that thirty-day window, then any new plan would be incorporated into the Physician Group Agreement.

In addition to the Physician Group Agreement were contracts between Aetna and two other insurance companies. The first was a Network Services Agreement reached between Aetna and First Health Group Corp. (later known as Coventry Health Care, Inc.) on September 1, 2007 (the "Aetna-Coventry Agreement"). The Aetna-Coventry Agreement simply provided, among other things not relevant to this appeal, that Coventry would have access to Aetna's Workers' Compensation Access network (the "AWCA network") on behalf of Coventry's "Clients." Paragraph 1.4 of the Aetna-Coventry Agreement defined "Client" as "[t]he entity, including but not limited to, insurance carriers, third party administrators, resellers, employers, and other entities, including, any client of such insurance carriers, third party administrators, resellers, employers and other entities who contract with [Coventry] or [Coventry's] Affiliate[s], either directly or indirectly, to access the [AWCA network]."

The second was a Managed Care Services Agreement reached between Coventry and AIG on October 1, 2008 (the "Coventry-AIG Agreement"). Under the Coventry-AIG Agreement, AIG was, among other things (again) not relevant to this appeal, granted access to Coventry's preferred provider networks. By entering into this contract, AIG became one of Coventry's "Clients" as contemplated in the Aetna-Coventry Agreement, which in turn gave AIG access to the AWCA network (which appellant was a member of under the Physician Group Agreement).

On December 15, 2008, Aetna sent appellant a letter (the "December 2008 letter") that provided some basic reminders as to how appellant's participation in the AWCA network worked. On the topic of compensation structure, the letter explained that appellant would be reimbursed for its medical services at the *lesser* of the following three rates:

1. 100 percent of appellant's billed charges;

2. 100 percent of the "Allowable Amount"[2] determined by "the payer"; and

3. Appellant's contracted rate with Aetna.

*Appellant's Billing Claims and the Proceedings in the Commission*

Between May 26, 2011, and May 25, 2012, appellant provided medical care to Stephen Hutton ("claimant") on fourteen separate dates of service for injuries claimant suffered from a compensable workplace accident. For that care, appellant billed appellee a total of $12,745.

AIG reimbursed appellant in the amount of $6,059 between May 2011 and May 2012. AIG accompanied its payments with an "Explanation of Bill Review" spreadsheet (the "EOB spreadsheet"), which detailed the amount appellant billed, the "Allowable Amount," and the "Repriced Amount"—i.e., the amount Aetna determined based on the contracted rate under the

---

[2] The December 2008 letter clarified that the "Allowable Amount" is "the reimbursement rate set by the workers' compensation payer" based either on the "applicable state fee schedule" or the reasonable market rate.

Physician Group Agreement. Sciro later explained in her testimony that AIG's reimbursement amount was based on the December 2008 letter's provision that appellant would be compensated at the lesser of appellant's billed charges, the "Allowable Amount" rate, and the contracted rate under the Physician Group Agreement.[3] She further clarified that the "contracted rate" referred to the Physician Group Agreement's provision that appellant would agree to accept Aetna's "market fee schedule" as payment in full, whatever that fee schedule was at the time of billing.

On September 1, 2018, appellant filed an application with the Commission seeking payment for unpaid bill charges in the amount of $7,181. On February 25, 2019, the parties stipulated to a Protective Order, regarding "[c]onfidential [i]nformation, including confidential and/or proprietary competitive business and/or commercially sensitive information" contained in the Aetna-Coventry Agreement and the AIG-Coventry Agreement. That order was entered by the deputy commissioner on March 11, 2019.

During discovery, appellant requested production of the Aetna-Coventry Agreement and the AIG-Coventry Agreement. Appellee provided appellant copies of those contracts but redacted certain sections of them, alleging the redacted sections were not implicated in the issues raised by appellant and instead related to the insurance companies' indemnification obligations, resolution of disputes, fee agreements, and confidentiality agreements with others. To support that allegation, appellee left the heading for each redacted section unredacted.

---

[3] All but two of the reimbursement payment determinations were based on the contracted rate. The two that were not were based on the "Allowable Amount" rate, which, according to the EOB spreadsheet, was $0 per charge. For those reimbursement payments, the EOB spreadsheet clarified that the contracted rate was also $0 per charge. Notwithstanding the fact that the "Allowable Amount" rate and the contracted rate were the same for those reimbursement determinations, the EOB spreadsheet provided that it was basing those determinations on the "Allowable Amount" rate, not the contracted rate.

The amount appellant billed for in those two charges was $665. But appellant does not take issue with the EOB spreadsheet's provision that the "Allowable Amount" for those charges was $0. Therefore, this Court does not consider any argument appellant makes with respect to $665 of the $7,181 it claims it is owed.

On December 11, 2019, appellant filed a motion to compel the full, unredacted copies of the Aetna-Coventry Agreement and the AIG-Coventry Agreement, arguing it required those contracts to determine whether the Physician Group Agreement "truly govern[ed] the bill charges pending." Appellee countered that (1) those contracts were offered to simply establish "the ability of AIG to properly access the controlling Physician Group Agreement," (2) the Physician Group Agreement, not the redacted contracts, governed how appellant was to be reimbursed, and (3) relatedly, the redacted sections of the requested contracts were "not relevant to the amount of payment due to [appellant]." In a letter opinion issued on January 27, 2020, the deputy commissioner denied appellant's motion to compel.

A hearing on appellant's application for further reimbursement took place before the deputy commissioner on July 31, 2020. On October 14, 2020, the deputy commissioner issued an opinion denying appellant's application. In that opinion, the deputy commissioner explained his prior denial of appellant's motion to compel, finding that the redacted sections of the other contracts were irrelevant because they went "solely to proprietary information that the insurer agreed to protect from disclosure and [did] not affect the method" by which appellant was paid. He further determined that the Physician Group Agreement and the December 2008 letter governed the issue of whether appellant was properly reimbursed for its medical services. Based on his review of the Physician Group Agreement and the December 2008 letter, the deputy commissioner ruled that appellant "agreed to be bound by the amounts Coventry calculated," which in turn supported the conclusion that the reimbursement appellant received was consistent with that contractual agreement.

On November 11, 2020, appellant appealed the deputy commissioner's ruling to the full Commission. In an opinion issued on March 22, 2021, the Commission unanimously affirmed. It, like the deputy commissioner, agreed that the Physician Group Agreement governed the issue

of whether appellant was appropriately reimbursed for the medical services it provided to claimant. It also agreed with the deputy commissioner that appellant was not entitled to unredacted copies of the Aetna-Coventry Agreement and the AIG-Coventry Agreement because those contracts were "only relevant to show AIG's access to the controlling Aetna Physician Group Agreement, and the portions of these [contracts] showing this information are not redacted." But unlike the deputy commissioner, the Commission did not find that appellant agreed to be bound to reimbursement rates as calculated by "Coventry." Instead, it credited Sciro's testimony that "*Aetna* priced the billed amounts based on the contract rates" and that those contract rates were "based on the Aetna Market Fee Schedule, pursuant to the Physician[] Group Agreement."

This appeal followed.

## II.  STANDARD OF REVIEW

Appellant's first assignment of error challenges the Commission's decision upholding the deputy commissioner's denial of appellant's motion to compel production of unredacted copies of the Aetna-Coventry Agreement and the AIG-Coventry Agreement. Decisions as to evidentiary matters "lie within the [Commission's] sound discretion and will not be disturbed on appeal absent an abuse of discretion." See Blankenship v. Commonwealth, 69 Va. App. 692, 697 (2019) (quoting Michels v. Commonwealth, 47 Va. App. 461, 465 (2006)). "[This Court] can only conclude that an abuse of discretion has occurred in cases where 'reasonable jurists could not differ' about the correct result." Dalton v. Commonwealth, 64 Va. App. 512, 522 (2015) (quoting Thomas v. Commonwealth, 44 Va. App. 741, 753, adopted upon reh'g en banc, 45 Va. App. 811 (2005)).

Appellant's second assignment of error challenges the Commission's finding that appellant was properly reimbursed under the terms of the Physician Group Agreement. To the

extent that assignment of error requires this Court to interpret the Physician Group Agreement, it presents a question of law that this Court reviews *de novo*. See Plunkett v. Plunkett, 271 Va. 162, 166 (2006). But to the extent the assignment of error requires this Court to review the facts surrounding Aetna's performance under the Physician Group Agreement, this Court is bound by the Commission's findings of fact so long as they are supported by credible evidence in the record. Wagner Enter., Inc. v. Brooks, 12 Va. App. 890, 894 (1991). In determining whether credible evidence exists, this Court will not "retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of the witnesses." Id. Furthermore, "[t]he fact that there is contrary evidence in the record is of no consequence if there is credible evidence to support the [C]ommission's finding." Id.

### III. ANALYSIS

#### A. Appellant's Motion to Compel

Appellant contends the Commission erred in upholding the deputy commissioner's denial of appellant's motion to compel production of unredacted copies of the Aetna-Coventry Agreement and the AIG-Coventry Agreement. Specifically, appellant avers that by not giving it "equal opportunity to consider the entirety of the claimed contracts," it was unable to "determine whether or not the sections removed from the contracts were susceptible to being understood in more than one way . . . [or] of even having any import one way or another, upon the claimant or the defenses." But because the Aetna-Coventry Agreement and the AIG-Coventry Agreement were in all relevant aspects collateral to the issues appellant raised in its application, this Court disagrees.

The basis of appellant's application before the Commission was whether appellant was owed reimbursement in excess of what it received from appellee. To address appellant's application, the Commission had to determine whether appellant entered into a contract

governing reimbursement for any medical services appellant rendered to claimant. See Leibovic v. Melchor, 35 Va. App. 51, 55 (2001) (noting that, under the statutory scheme governing workers' compensation cases, medical providers are permitted to "enter[] into agreements for fee reimbursement"). On that question, the evidence established that appellant was a party to the Physician Group Agreement,[4] and there is no dispute that the Physician Group Agreement contained terms controlling the issue of what level of reimbursement appellant was entitled to for the services it rendered to claimant. Accordingly, because appellant had access to the unredacted contractual terms that governed the reimbursement issue appellant raised before the Commission, neither the deputy commissioner nor the Commission abused their discretion in preventing appellant from accessing unredacted copies of the Aetna-Coventry Agreement or the AIG-Coventry Agreement.

B. The Sufficiency of Appellee's Reimbursement Under the Physician Group Agreement

As to the second issue, appellant contends the Commission erred in determining it "was properly paid pursuant to the terms and conditions of the contracts." Appellant's primary

---

[4] In the first portion of its second assignment of error, appellant avers that the Commission erred "in finding that [appellee] satisfied [its] evidentiary burden of proving the existence . . . of the contracts." But appellant offers no argument on brief in support of that part of its second assignment of error and instead dedicates its brief to contesting whether it was sufficiently reimbursed under the terms of the Physician Group Agreement. See Teleguz v. Commonwealth, 273 Va. 458, 473 (2007) ("In the absence of any argument in support of [an] assignment of error, the assignment of error is abandoned.").

Although appellant appeared to offer some arguments at oral argument related to whether appellee satisfied its burden of proving the existence of a contract between Aetna and appellant, this Court generally does not consider arguments raised for the first time at oral argument but not included in an appellant's brief. See Stokes v. Commonwealth, 61 Va. App. 388, 397 (2013) (citing Va. Dep't of State Police v. Barton, 39 Va. App. 439, 447 (2002)). But even assuming without deciding that appellant properly presented a challenge to the Commission's finding of an existing contract between appellant and Aetna, that challenge is without merit. For one thing, the Physician Group Agreement contained the signatures of both appellant and Aetna, and appellant does not challenge the validity of either signature. For another, the December 2008 letter noted appellant's participation in the AWCA network and gave appellant the opportunity to opt out of that network. There is no evidence that appellant ever opted out of the network, nor does appellant provide any argument to the contrary on appeal.

argument is that even though the EOB spreadsheet and Sciro's testimony established *what* Aetna determined appellant was owed under the Physician Group Agreement, neither established *how* Aetna ultimately came to that determination.

This Court finds no error in the Commission's judgment on this point. Even if, for the sake of argument, this Court were to accept appellant's premise that appellee's evidence never explained how Aetna came to the reimbursement number it did, that premise is of no consequence given what appellant agreed to in the Physician Group Agreement.

In paragraph 3.1 of that contract, appellant agreed that Aetna would reimburse it for medical services it rendered to claimant in accordance with the attached "Compensation Schedule" or "in accordance with the compensation arrangement then in effect [at the time of billing]; either of which may be modified from time to time by [Aetna]." Under the Compensation Schedule, appellant agreed to "accept [Aetna's] then current Reasonable Equitable Fee Schedule . . . as payment in full." Additionally, the December 2008 letter clarified that appellant would be reimbursed at the lesser rate of (1) appellant's billed charges, (2) the "Allowable Amount," and (3) the contracted rate under the Physician Group Agreement.[5] And the EOB spreadsheet made clear that for all but two charges, the contracted rate was the agreed upon sum because it was the lesser of those three rates.

Properly understood, then, the "contracted rate" appellant agreed to under the Compensation Schedule was whatever Aetna's "reasonable equitable fee schedule" was at the

---

[5] Appellee asserted, and the Commission appeared to agree, that the December 2008 letter was an "amendment" made to the Physician Group Agreement in accordance with paragraph 8.2 of that contract—i.e., the provision that allowed Aetna to introduce "new Plans" in the course of appellant and Aetna's arrangement that would be incorporated into the Physician Group Agreement if appellant did not object within thirty days of receiving such "new Plans." Appellant does not challenge that aspect of the Commission's opinion, so this Court assumes without deciding that the December 2008 letter was an amendment to the Physician Group Agreement.

time of billing. But nowhere in the Physician Group Agreement—or in any amendment/addendum to that contract—did appellant or Aetna include a provision explaining what Aetna's "reasonable equitable fee schedule" was or how Aetna calculated that schedule. Nor did appellant seek to include a provision imposing a duty on Aetna or AIG to explain how its then-current "reasonable equitable fee schedule" was calculated whenever AIG sent appellant reimbursement payments.

So, because appellant agreed to the terms it did, and because appellant does not argue they are unconscionable, those terms bound the Commission in the proceedings below and bind this Court on appeal. See VACORP v. Young, 298 Va. 490, 496 (2020) ("[O]ur common-law tradition counsels that courts 'are not lightly to interfere' with lawful exercises of the 'freedom of contract.'" (quoting Commonwealth Div. of Risk Mgmt. v. Va. Ass'n of Counties Grp. Self Ins. Risk Pool, 292 Va. 133, 143 (2016))); see also Chaplain v. Chaplain, 54 Va. App. 762, 773 (2009) (noting a contractual term is unconscionable if it works an inequality so "gross" as to "shock the conscience" of the court). And in light of the terms appellant agreed to, all the Commission needed to determine was whether the "repriced amount" in the EOB spreadsheet was based on Aetna's then-current fee schedule.

Sciro provided unrebutted testimony that it was. As the trier of fact, the Commission was entitled to weigh the credibility of Sciro's testimony. See Montalbano v. Richmond Ford, LLC, 57 Va. App. 235, 252 (2010) ("[T]he [C]omission resolves all conflicts in the evidence and determines the weight to be accorded the various evidentiary submissions." (quoting Bass v. City of Richmond Police Dep't, 258 Va. 103, 114 (1999))). And because the Commission accepted Sciro's testimony as credible, this Court is bound by that factual judgment, particularly when considering there is no argument that Sciro's testimony was inherently incredible as a matter of law. See Wagner Enterprises, 12 Va. App. at 894 ("[This Court] does not . . . make its own

- 11 -

determination of the credibility of the witnesses."); <u>Kelley v. Commonwealth</u>, 69 Va. App. 617, 626 (2019) (noting that a witness' testimony is inherently incredible as a matter of law only when it is "so contrary to human experience as to render it unworthy of belief" or is "shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ" (citations omitted) (quotation marks omitted)).

In its brief and at oral argument, appellant made much of the fact that appellee never disclosed Aetna's then-current reasonable equitable fee schedule to the Commission. But appellant points to nowhere in the record where it requested production of that fee schedule. And even if it could, it made no argument in the Commission or on appeal that appellee *prevented* it from accessing Aetna's then-current fee schedule.

By making that strategic decision, appellant essentially left it to appellee's discretion to determine how it would prove that appellant was sufficiently reimbursed under the Physician Group Agreement. Although appellee certainly could have produced Aetna's reasonable equitable fee schedule before the Commission, it chose not to do so, and nothing in the Physician Group Agreement or in any governing law required otherwise. In proving its case, appellee instead chose to rely on Sciro's testimony that the "repriced amount" in the EOB spreadsheet was based on Aetna's then-current reasonable equitable fee schedule. The Commission accepted Sciro's testimony as credible, and this Court is bound by that decision under the applicable standard of review.

In short, appellant unqualifiedly agreed in the Physician Group Agreement to accept Aetna's then-current "reasonable equitable fee schedule" as "payment in full" for medical services it rendered to claimant. Because that contracted rate represented the lowest rate appellant was entitled to under the December 2008 letter, the Commission did not err in ruling that appellant was properly reimbursed.

## IV.  CONCLUSION

For the foregoing reasons, this Court affirms the Commission's upholding of the deputy commissioner's denial of appellant's motion to compel production of certain unredacted contracts and its denial of application for further reimbursement for the medical services rendered to claimant.

<u>Affirmed.</u>