COURT OF APPEALS OF VIRGINIA

Present:   Judges Friedman, Chaney and Raphael
Argued by videoconference


TOMMY F. KPAKIO

MEMORANDUM OPINION* BY
v.        Record No. 2042-23-4          JUDGE FRANK K. FRIEDMAN
                                                MAY 20, 2025

SENTARA HEALTHCARE, ET AL.


FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

David M. Snyder (Matthew J. Peffer; ChasenBoscolo Injury
Lawyers, on brief), for appellant.

Jesse F. Narron (K. Elizabeth O'Dea; PennStuart, on brief), for
appellee.


Tommy Kpakio appeals the Workers' Compensation Commission's opinion awarding a

permanent partial disability award based on the partial loss of his right long middle and ring fingers.

Kpakio argues that the Commission erred in concluding that his injury was limited to two fingers,

rather than to his hand. Kpakio also alleges that the Commission erred by finding appellee's expert

witness more credible than his own. Because the Commission's challenged rulings were supported

by credible evidence, we affirm.

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND[1]

On August 26, 2020, Kpakio, an HVAC mechanic, injured his right middle and ring fingers on a metal fan blade while performing maintenance on an air handling unit. Kpakio sought medical treatment and underwent a partial amputation of the right middle and ring fingers.

Kpakio initially continued to heal with "excellent progression of the right middle finger" and improvement of the right ring finger. But soon after, he suffered an exposure to refrigerant on his fingers resulting in frostbite, cold intolerance, hypersensitivity, and decreased pinch strength of his right middle finger. Following an evaluation, Dr. Lindsay Jones performed an ablation of the distal nail matrix on Kpakio's right middle finger and excision of the graft area at his ring fingertip. In a follow-up appointment, Dr. Jones noted that Kpakio was "[d]oing well" and released him back to work "full duty."

Kpakio eventually returned to his employment as a "plant operator." In this role, Kpakio performed the "same type of job that [he] was doing before," but with "more responsibility," including HVAC work. Kpakio still used "hand tools," such as wrenches and drills, but "no longer ha[d] strength in [his] fingers to use those tools" as he had been able to before his injury. Kpakio was unable to make a closed fist. Kpakio experienced phantom pain in his amputated fingers that radiated to his hand and up his arm.

Kpakio filed a claim for permanent partial disability based on his injuries to his "Right Hand, Fingers Amputated [and] Mental Injury." Kpakio sought an independent medical examination (IME) and PPD rating from Dr. Richard Meyer. Dr. Meyer conducted the evaluation in February of 2022 and concluded that Kpakio suffered from "a painful amputation site at the DIP

---

[1] "On appeal from a decision of the Commission, 'the evidence and all reasonable inferences that may be drawn from that evidence are viewed in the light most favorable to the prevailing party below.'" *Jalloh v. Rodgers*, 77 Va. App. 195, 200 n.2 (2023) (quoting *City of Charlottesville v. Sclafani*, 70 Va. App. 613, 616 (2019)).

joint of the ring finger with a very well maturing painful fingernail exposed." Kpakio was also unable to "make a fist with the third and fourth digits due to the amputations," and his "[g]rip strength [was] diminished as can be expected." In rendering his conclusions, Dr. Meyer cited the Fourth Edition of the *AMA Guides to the Evaluation of Permanent Impairment* ("Fourth Edition") and assessed Kpakio with a 30% impairment to the middle finger and 70% impairment to the ring finger. Dr. Meyer then converted these ratings to a 14% hand rating, which he then converted to a 13% upper extremity rating. Dr. Meyer added additional percentages for other factors and ultimately arrived at a 38% permanent partial disability rating for the right upper extremity. Dr. Meyer recommended restrictions on "activities involving strong grip, involving strong and repeated flexion and extension of the digits and those activities, which increase his pain level, especially on the fourth digit amputation stump."

In December of 2022, Dr. David Miller performed an IME of Kpakio, reviewed his medical records, and assessed a PPD rating based on his examination and review of the records. During the evaluation, Kpakio "report[ed] some sensitivity over the tip of the ring finger and long finger, but he report[ed] he has returned to use of his hand with the obvious deformities from his injury." Dr. Miller stated that Kpakio was "able to make a good fist and extend the hand" and that he was "well healed over the distal tips of the ring and long fingers." Dr. Miller observed the presence of mild mottling of the skin from a second-degree burn on Kpakio's fingers but excluded this injury from the impairment rating because it was unrelated to his workplace accident.

Dr. Miller concluded that Kpakio "does have permanent partial disability and will have an impairment rating due to the amputations." Dr. Miller, citing the Sixth Edition of the *AMA Guides to the Evaluation of Permanent Impairment* ("Sixth Edition"), assessed that Kpakio had a 45% ring finger impairment, and 10% long finger impairment, which equated to a 7% impairment to the hand, and 6% to the upper extremity. Unlike Dr. Meyer, who provided no explanation for why he

used the Fourth Edition, Dr. Miller explained that he used the Sixth Edition because it was the "most current edition" and "was developed to make the evaluations more objective using less in the way of subjective opinions to try to avoid inflated evaluation percentages for impairment."

The deputy commissioner held a hearing to determine "[t]he threshold issue [of] whether [Kpakio] is entitled to benefits based on ratings to his fingers, a rating to his hand, or a rating to his upper extremity." After hearing Kpakio's testimony and reviewing the competing medical opinions, the deputy commissioner held that it was appropriate to award permanent partial disability benefits based upon a rating to the hand, as the symptoms extended beyond Kpakio's fingers into the hand. Although Kpakio did not injure the hand itself, the deputy commissioner found that Kpakio's testimony "reflect[ed] his hand symptoms emanate[d] from the amputated fingers."[2] The deputy commissioner considered that Dr. Meyer assigned a 14% hand rating and Dr. Miller assigned a 7% hand rating. Because neither was Kpakio's treating physician, the deputy commissioner averaged their ratings. But because the deputy commissioner was "troubled" by Dr. Meyer's use of the Fourth Edition, he assigned "slightly more weight" to Dr. Miller's rating. The deputy commissioner awarded permanent benefits calculated on a 9% loss of use of Kpakio's right hand, as well as necessary medical benefits. Both parties requested review by the full Commission.

Before the Commission, Kpakio argued that he should be awarded permanent partial disability benefits for loss of use of his arm or, alternatively, that the percentage awarded for the hand was too low. Sentara contended that the disability rating should have been limited only to Kpakio's fingers. The Commission agreed with Sentara, holding that Kpakio's permanent impairment rating should have been limited to his two injured fingers because Kpakio's treatment

---

[2] The deputy commissioner also held that Kpakio did not suffer emotional distress from the accident. This finding is not at issue on appeal.

and surgeries were confined to his fingers, and Kpakio acknowledged that he had no direct injury to his hand or arm in the work accident. The Commission found that "[t]he specific members involved in the accident were the right long and ring fingers, and the award of permanency benefits should be confined to those members," and therefore reversed the award and remanded the case to the deputy commissioner to enter a new award for Kpakio's loss of use of his two injured fingers.

On remand, the deputy commissioner was again confronted with "competing ratings from Dr. Meyer, who assigned a 70% ring finger rating and a 30% long finger rating, and Dr. Miller, who assigned a 45% ring finger rating and a 10% long finger rating." Although the deputy commissioner found that he "could award permanent partial disability benefits based on a simple average of their respective ratings," he remained "troubled" by Dr. Meyer's use of the Fourth Edition *Guides*. Consequently, the deputy commissioner again assigned "slightly more weight" to Dr. Miller's rating; the deputy commissioner awarded Kpakio disability benefits for the 50% loss of use of his right ring finger and the 15% loss of use of his right long finger. Kpakio requested that the Commission review the award.

The Commission affirmed the deputy commissioner's award. The Commission held that the deputy commissioner considered Kpakio's testimony, along with the medical evidence and the impairment ratings provided in this case, and "weighed the ratings appropriately and arrived at ratings consistent with the presented evidence." The Commission held that the deputy commissioner did not err in assigning Dr. Miller's opinion more weight, as his opinion was based on "his objective measurements and use of a more current edition of the guide."

On appeal, Kpakio contends that the Commission erroneously reversed the deputy commissioner's award based upon a disability to his right hand. Kpakio also argues that the Commission erred in affirming the deputy commissioner's refusal to credit Dr. Meyer's opinion over Dr. Miller's.

ANALYSIS

I. Standard of review

"On appeal from a decision of the Workers' Compensation Commission, the evidence and all reasonable inferences that may be drawn from that evidence are viewed in the light most favorable to the party prevailing below." *Anderson v. Anderson*, 65 Va. App. 354, 361 (2015) (quoting *Artis v. Ottenberg's Bakers, Inc.*, 45 Va. App. 72, 83 (2005) (en banc)). The Court is "bound by the [C]ommission's findings of fact as long as 'there was credible evidence presented such that a reasonable mind could conclude that the fact in issue was proved,' even if there is evidence in the record that would support a contrary finding." *Artis*, 45 Va. App. at 83-84 (quoting *Westmoreland Coal Co. v. Campbell*, 7 Va. App. 217, 222 (1988)); *see also* Code § 65.2-706(A).

The Court "defer[s] to the [C]ommission in its role as fact finder." *Paramont Coal Co. Va., LLC v. McCoy*, 69 Va. App. 343, 350 (2018) (second alteration in original) (quoting *Clinchfield Coal Co. v. Reed*, 40 Va. App. 69, 72 (2003)). "In that role, 'the [C]ommission resolves all conflicts in the evidence and determines the weight to be accorded the various evidentiary submissions.'" *Id.* (alteration in original) (quoting *Montalbano v. Richmond Ford, LLC*, 57 Va. App. 235, 252 (2010)). "It is well established that this Court 'does not retry the facts, reweigh . . . the evidence, or make its own determination of the credibility of the witnesses.'" *Id.* (alteration in original) (quoting *Wagner Enters., Inc. v. Brooks*, 12 Va. App. 890, 894 (1991)). And "the appearance of 'contrary evidence in the record is of no consequence if there is credible evidence to support the commission's finding.'" *Commonwealth v. Bakke*, 46 Va. App. 508, 519 (2005) (quoting *Cent. Va. Obstetrics & Gynecology Assocs. v. Whitfield*, 42 Va. App. 264, 279 (2004)). "A question raised by conflicting medical opinions is a question of fact." *Island Creek Coal Co. v. Honaker*, 9 Va. App. 336, 340 (1990); *see also McPeek v. P.W. & W. Coal Co.*, 210 Va. 185, 188 (1969) (explaining that "a

finding upon conflicting medical evidence that a certain physical condition does or does not exist is such a conclusive finding of fact").

The Workers' Compensation Act provides compensation for permanent partial loss of use of certain body parts, including loss of a finger or fingers. *See* Code § 65.2-503(B)(2)-(3). "[F]or the permanent partial loss or loss of use of a member, compensation may be proportionately awarded." Code § 65.2-503(D). "[A] numerical rating [of the permanent partial loss of use of the injured body part] is required so that benefits may be proportionally awarded according to the percentage loss and determined by the schedule in Code § 65.2-503(B)." *Va. Nat. Gas, Inc. v. Tennessee*, 50 Va. App. 270, 279 (2007) (second alteration in original) (quoting *Hill v. Woodford B. Davis Gen. Contractor*, 18 Va. App. 652, 654 (1994)).

A claimant bears the burden of proving the level of impairment from a work-related injury. *Hungerford Mech. Corp. v. Hobson*, 11 Va. App. 675, 677-78 (1991). "Where the issue concerns a permanent partial loss of use, the [C]ommission must rate 'the percentage of incapacity suffered by the employee' based on the evidence presented." *Id.* at 677 (quoting *Cnty. of Spotsylvania v. Hart*, 218 Va. 565, 568 (1977)). "Medical evidence is not necessarily conclusive, but is subject to the [C]ommission's consideration and weighing." *Id.* "Thus, a medical rating of the employee's disability is evidence which an employee offers in order to meet the burden of proof." *Id.* at 677-78. "[W]e must affirm the commission's judgment awarding [permanent partial disability] if those findings are supported by credible evidence in the record, regardless of whether contrary evidence exists or contrary inferences may be drawn." *United Airlines, Inc. v. Sabol*, 47 Va. App. 495, 500 (2006) (second alteration in original) (quoting *Rusty's Welding Service, Inc. v. Gibson*, 29 Va. App. 119, 131 (1999)).

II. The Commission was not plainly wrong or without evidence in concluding that, under the circumstances, Kpakio was entitled to an award only for injury to his fingers.

Kpakio argues that the Commission erred as a matter of law when it limited his recovery to his fingers because the ultimate award does not compensate him for his disability to his hand.[3] Although Kpakio asks that we review this assignment of error de novo, the Commission's determinations regarding functional impairment are findings of fact. *See Sabol*, 47 Va. App. at 500-01. By statute, "the [C]ommission's factual findings are conclusive and binding on this Court when those findings are based on credible evidence." *Montalbano*, 57 Va. App. at 250 (citing Code § 65.2-706). Upon reviewing the record, the Commission found that "[t]he specific members involved in the accident were the right long and ring fingers" in concluding that the award of permanency benefits should be confined to those members. We must therefore determine if those "findings are based on credible evidence." *Montalbano*, 57 Va. App. at 250.

There is no dispute that Kpakio's injury was to his right ring and middle fingers. Kpakio's medical records, which Dr. Miller reviewed, do not document any hand-related issues resulting from his finger injuries.[4] In follow-up appointments after the amputations, Kpakio reported that he was doing well and had resumed work with no issues; he was released to full duty, with no work restrictions. Kpakio testified before the deputy commissioner that he did not injure his hand or arm in the workplace accident, and he stated that he did not seek any medical

---

[3] Kpakio also argues his functional disability extended to his arm. But this argument is outside the scope of his assignment of error, which addresses only the Commission's purported error in reversing the deputy commissioner's right hand finding. We are "limited to reviewing the assignments of error presented by the litigant." *Banks v. Commonwealth*, 67 Va. App. 273, 289 (2017); Rule 5A:20(c)(1) ("Only assignments of error listed in the brief will be noticed by this Court."). Thus, we will "not consider issues touched upon by the appellant's argument but not encompassed by his assignment of error." *Banks*, 67 Va. App. at 290.

[4] Kpakio testified that he provided Dr. Meyer photographs of his injuries. It is suggested that Dr. Meyer also was sent Kpakio's medical records, but Dr. Meyer does not reference them in his report. By contrast, Dr. Miller clearly did review the medical records, and they support his conclusions.

treatment for his hand or arm. In fact, Kpakio's first reference to a hand injury was in his IME with Dr. Meyer. Dr. Meyer noted Kpakio's inability to make a full fist "due to the amputations" and diminished grip strength. Notably, the record of Dr. Meyer's examination makes no mention of any other subjective pain complaints or issues related to Kpakio's hand.

When Dr. Miller conducted his examination—nearly ten months after Dr. Meyer and with the benefit of Kpakio's medical records—he observed that Kpakio was "able to make a good fist and extend the hand." Dr. Miller did not note that Kpakio suffered any injury to his arm or hand. Thus, credible evidence supported the Commission's finding that the award of permanency benefits should be confined to Kpakio's fingers.

III. The Commission was not plainly wrong or without evidence in assigning more weight to Dr. Miller's expert medical report.

Kpakio argues that the Commission's decision to give Dr. Miller's expert report more weight than Dr. Meyer's is "legally erroneous" and requires reversal.

To begin, we note that Kpakio's argument on this issue challenges a factual finding by the Commission. *See Island Creek Coal Co.*, 9 Va. App. at 340 (explaining that a "question raised by conflicting medical opinions is a question of fact"). Thus, the Commission's determination to give Dr. Miller's expert report more weight than Dr. Meyer's is binding on appeal if supported by credible evidence. *Id.*

Here, the record demonstrates that the Commission carefully weighed and resolved the competing medical evidence to determine the appropriate disability rating. The Commission concluded that it was reasonable to assign more weight to Dr. Miller's opinion because his opinion rested on "his objective measurements and use of a more current edition of the guide."[5]

---

[5] Dr. Miller explained his rationale for using the latest edition:

> My recommendation would be the use of the most current edition, which is the 6th Edition which indeed has been out since 2007. It

Further, Dr. Miller had the benefit of reviewing Kpakio's medical records, and he also conducted the IME of Kpakio nearly ten months after Dr. Meyer.

Although Kpakio contends that the Commission should have accepted Dr. Meyer's impairment rating, the Commission found his opinion less persuasive because he failed to explain why he did not use the most current edition of the *Guides*. We afford great deference to that finding of fact and are not permitted to reweigh the evidence or second-guess the Commission's credibility determination. *Va. Nat. Gas*, 50 Va. App. at 278. The Commission "must rate 'the percentage of incapacity suffered by the employee' based on the evidence presented." *Hobson*, 11 Va. App. at 677 (quoting *Hart*, 218 Va. at 568). The record evidence supports the Commission's disability ratings here.

## CONCLUSION

The Commission's factual findings are supported by credible evidence. Accordingly, we affirm the Commission's award of permanent partial disability benefits.

*Affirmed.*

---

was developed to make the evaluations more objective using less in the way of subjective opinions to try to avoid inflated evaluation percentages for impairment. It is the most current edition that is out there and has been updated in its fourth printing since 2014 so in my opinion this should be the edition that should be used for these evaluations.

The Commission was entitled to accept Dr. Miller's explanation as to why the Sixth Edition was superior to the Fourth Edition, and accordingly give more weight to Dr. Miller's report.